that the property sought to be sold cannot lawfully be diverted to the use of any religious body not constituting a part of the Presbyterian Church. Without expressing or intimating any opinion as to the soundness of this contention, it is apparent, 'to say the least, that it is arguable, and one which should not be determined upon a motion of this character. It appears that, upon the expulsion from the Presbyterian Church of the petitioner as a religious body, the Presbytery of New York took possession of the church property, organized a congregation, and appointed a minister, and now occupies the property, so that its use for religious purposes is not interrupted. It also appears that two actions are now pending, both involving the right of possession and control of the church property. In one of these, more appropriately than in the present proceeding, can the conflicting claims of the petitioner and the intervener be determined.

We are therefore of the opinion that the court should not give its assent to a sale while these claims remain undetermined, but that the proceeding should be stayed or suspended until those matters are definitely determined.

Order affirmed, with $10 costs and disbursements. All concur.

---

## McBRIDE v. ILLINOIS NAT. BANK.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. BANKS AND BANKING (§ 172*)—DEALINGS BETWEEN BANKS—COLLECTIONS—
   FAILURE TO COLLECT—PROCEEDINGS FOR COLLECTION—PROTEST ON NON-
   PAYMENT.
   When a bank receives paper for collection, it becomes the owner's agent for that purpose, and must present it for acceptance and payment, and, if not paid when presented, must take steps by protest and notice to charge the drawer and indorser. and will be liable to the owner for damage resulting from its neglect to do so, in absence of an agreement exempting it from such duties.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 619; Dec. Dig. § 172.*]

2. BANKS AND BANKING (§§ 171, 175*)—DEALING—COLLECTIONS—AGENCY.
   A bank to which a note is forwarded for collection by another bank becomes the agent of the forwarding bank for due collection, and not of the owner, and, in absence of a contrary agreement, is liable to that bank for loss caused it by its failure to discharge its duties as agent, and, in the absence of proof of a special agreement, it will be assumed that no agreement existed exempting it from liability.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 598, 640; Dec. Dig. §§ 171, 175.*]

3. BANKS AND BANKING (§ 171*)—COLLECTIONS.
   Where a note was forwarded to a bank for collection under an agreement between it and the forwarding bank that it would be liable only for failure to exercise due care in selecting its correspondents for the collection of the note, it would not be liable for a negligent failure to collect by any bank to which the note was subsequently forwarded, if it used due care in selecting its correspondents.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 606; Dec. Dig. § 171.*]

---

4. BILLS AND NOTES (§ 389*)—INDORSER'S LIABILITY—PRESENTMENT—PLACE OF PRESENTMENT.

To hold an indorser thereon, a note must be presented at the place at which it is made payable, as well as at the time of payment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1055; Dec. Dig. § 389.*]

5. BILLS AND NOTES (§ 408*)—PROTEST—NONPAYMENT—NECESSITY.

Formal protest by a notary for nonpayment is not essential to bind an indorser, being merely evidentiary, the essential steps being presentment and demand at the time and place provided in the note, followed by notice thereof, and of nonpayment, to the indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1019; Dec. Dig. § 408.*]

6. BANKS AND BANKING (§ 172*)—COLLECTIONS—FAILURE TO COLLECT—FAILURE TO PROPERLY PRESENT—PRESENTATION AT PLACE PROVIDED.

The bank to which a note was finally forwarded for presentment and collection would be liable to the owner for damages caused by its negligent failure to present the note for payment at the place provided in the note, thereby releasing an indorser, and not an intermediate bank which forwarded the note, though both banks were agents for collection, and the latter bank inadvertently stated in its letter forwarding the note that no protest was necessary, as the indorser was relieved by the failure to present at the proper place, and not the intermediate bank's mistake; formal protest for nonpayment not being essential to hold an indorser if the note is presented and payment demanded at the time and place provided, and notice of nonpayment is given the indorser.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 619–628; Dec. Dig. § 172.*]

7. BANKS AND BANKING (§ 172*)—COLLECTIONS—FAILURE TO COLLECT—AGENCY.

If all of the banks through which a note was forwarded for collection after it had been forwarded by the holder to its correspondent bank were agents of the correspondent bank, and not of each other, the correspondent bank alone would be liable to the owner for the negligent failure of the final collecting bank to properly present for payment so as to relieve an indorser; there being no privity between the owner and the negligent bank so as to make it liable.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 619–628; Dec. Dig. § 172.*]

Appeal from Judgment on Report of Referee.

Action by Dennis H. McBride against the Illinois National Bank. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

See, also, 128 App. Div. 503, 112 N. Y. Supp. 794.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

McCurdy & Yard (Delos McCurdy, of counsel), for appellant.
George A. Beattys, for respondent.

CLARKE, J. This is an action to recover damages for the alleged negligence of the defendant, by which the indorser of a promissory note became relieved of its liability, and, the maker being insolvent, plaintiff's assignor lost the amount thereof.

On May 10, 1907, the Western Tool Works of Galesburg, Ill., made a four months promissory note, due September 10th, to the order of

the Goodyear Tire & Rubber Company of Akron, Ohio, for $6,432.44, payable at the Galesburg National Bank, Galesburg, Ill. Said note was thereafter for value duly indorsed by the said rubber company, and discounted for its benefit by the National City Bank of Akron, Ohio, which became the owner and holder thereof before maturity. The proceeds of the note were placed to the account of the rubber company, and duly checked out. Shortly before maturity the National City Bank of Akron sent said note to its correspondent, the First National Bank of Cleveland, Ohio, for collection. The First National Bank of Cleveland acknowledged receipt of same in a letter containing the following:

"In receiving and forwarding paper outside of this city, this bank acts only as your agent, using its best efforts in selecting its correspondents, and will assume no responsibility except for its own acts."

It was in evidence that an agreement had been made between the two banks in 1903 which was still existing, under which the First National Bank agreed to use the same judgment in selecting correspondents to collect the items as they would if the items were their own, and, in view of the fact that the National City Bank would keep a substantial credit balance with the First National, that bank would receive no compensation for its services, and the National City would hold it to no liability other than to use due diligence in selecting first-class bank correspondents.

The First National Bank of Cleveland forwarded the note to the Commercial National Bank of Chicago, Ill. Said bank forwarded said note to the Illinois National Bank of Peoria, Ill. Said bank thereupon forwarded the note to the People's Trust & Savings Bank of Galesburg, Ill. The letter of transmissal from the Illinois National Bank, the defendant, to the People's Trust & Savings Bank, reads:

"Please find enclosed for collection and returns 8463 Western Tool Works 6432.44. Please do not hold this collection for any reason or excuse. Return at once if not paid."

By mistake of a clerk it also contained the words "no protest." The clerk of the People's Trust Savings Bank of Galesburg testified:

"I was the collection clerk of that bank. * * * On the day before maturity I called up the Western Tool Works, and notified them that we held this note for collection, and it would be due the following day, and that same would be presented at their office the day of maturity. That was the 10th day of September. I presented this note for payment at the office of the Western Tool Works to the bookkeeper. She took the note to an apartment in the rear that was part of the main office. She brought the note back to me with the information that they would report on this at our bank in the afternoon. I then took the note back to our bank. By closing time I had received no word from the Western Tool Works with regard to the note, and I then took it up with the assistant cashier, and he called the firm up with a last demand for payment. I mean the Western Tool Works. Payment was not made and I attached this slip here (indicating) to the note. On the slip I marked opposite for explanation why the note was being returned. I marked 'No attention' with just a check mark."

This exhibit reads: "Returned unpaid. Reason checked, if known." Alongside are a number of items in a column "Check sent," "Has been paid," "Will remit," "Will Write," "As requested," "Payment stopped," "Never pays drafts," "Not correct," "No attention," "For

signature," "For endorsement," "Not enough funds,"· "Refused," and this check mark was opposite the words, "No attention."

The·following day, September 11th, the defendant sent the note back to the Commercial Bank of Chicago, with a letter reading as follows: "Returned reasons, if any given, endorsed Note Galesburg, $6,432.44." No reasons were indorsed or stated. The defendant sent no other notice in regard to this note to any one at that time or for several days thereafter. The Commercial National Bank of Chicago received this letter from the defendant on September 12th, and on the same day returned the note to the defendant with the following letter:

"We return herewith note for $6,432.44 payable at Galesburg, Ill. We regret to inform you that we cannot accept the item in its present condition. It was sent you subject to protest and should have been protested, if not paid at maturity. We will thank you to secure a remittance of this note and advise us at your earliest convenience."

On the same day the Commercial National of Chicago telegraphed the First National of Cleveland, as follows:

"Galesburg No. 15815 returned without protest, we forward again."

And on the same day wrote to said First National Bank of Cleveland:

"Referring to your collection No. 15815, a note for $6432.44, payable at Galesburg, Illinois. Our correspondent has returned this item to us unpaid, stating that parties pay no attention to their notices. We have returned same instructing them to present again and if not paid to protest and return."

The First National of Cleveland received this telegram and letter September 13th, and on the same day wrote to the National City Bank of Akron, plaintiff's assignor:

"We are to-day in receipt of a collect telegraph from the Commercial National Bank, Chicago, reading as follows: 'Galesburg No. 15815 returned without protest we forward again.' On looking into the matter we find it is your number 5755 on the Western Tool Works, Galesburg, for $6,432.44. We are not at present in receipt of any further information, but will keep you advised when things progress. Up to this time we seem to be out the telegraph charges and the item does not seem to have been paid."

So that on the 14th of September the National City Bank of Akron received notice in due course of mail that the note had not been paid. It did not, however, notify the rubber company or demand payment from it as indorser. The defendant received the letter of the Commercial National of Chicago dated September 12th returning the note for protest on September 13th, and on the same day sent it back to the People's Trust & Savings Bank of Galesburg, which received it on September 14th, and on that day caused the same to be presented to the maker, the Western Tool Works, but not at the Galesburg National Bank where the note was payable, and demanded payment, which was refused, and thereupon caused it to be protested and notice of dishonor and protest to be sent to all of the parties whose names appeared on the note, including the plaintiff's assignor and the original payee and indorser.

The evidence shows that the first notice which the Goodyear Tire & Rubber Company received of the dishonor of this note was on Sep-

tember 17th. Because of these facts the rubber company has refused to pay the note, although solvent, and financially able to do so, and claims that it cannot be held responsible therefor. It is admitted that the Western Tool Works, the maker of the note, is insolvent and unable to pay. The plaintiff claims that, by the mistake and negligence of the defendant in inserting in its letter of transmissal to the People's Trust & Savings Bank the words "No protest," the note was not properly presented and protested, and that thereby the indorser was relieved of liability, and that it has a right of action against the defendant to recover its damages thereby incurred.

In Montgomery County Bank v. Albany City Bank, 7 N. Y. 459, the plaintiff was the owner and holder of a draft which it transmitted for collection to the Albany City Bank, which, in turn, transmitted it to the Bank of the State of New York, at New York City. That bank did not present the draft for payment on the day it was due or give notice of nonpayment thereof to the drawers or indorsers, by means of which neglect plaintiff sustained damages to the amount of the draft. A verdict under the instructions of the court was returned against both of the defendants. The Court of Appeals reversed as to the Bank of the State of New York, and dismissed the complaint as to it, holding:

"When a bank receives from the owner a bill, for collection, payable either at the place where such bank carries on its business or at some distant place, it thereby becomes agent of the owner for the collection, and in the discharge of its obligations as such, if the bill has not been accepted, it is bound to present the same for acceptance, without unreasonable delay, as well as to present the same for payment, when it becomes payable; and if not accepted when presented for that purpose, or not paid, when presented for payment, it must take such steps by protest and notice as are necessary to charge the drawer and indorser, or it will be liable to its principal, the owner, for the damages which the latter sustains by any neglect to perform such duties, unless there be some agreement to the contrary, express or implied. And, if it be necessary or convenient for the bank to employ some other bank or individual to collect the bill, either at the place of its location or at a distant place, where the bill is payable, and it does employ another bank or individual to whom it transmits the bill for that purpose, the latter, on receiving the bill and entering upon the discharge of the trust, becomes the agent of the former bank and not of the owner, and, in the absence of any agreement to the contrary, is answerable to it for any neglect in the discharge of its duties as agent, whereby the former bank sustains any loss or damage. The principle is that when a trust is confided to an agent, and he whose interest is entrusted is damnified by the neglect of one whom the agent employs in the discharge of the trust, the agent employed shall answer to the person damnified. * * * The New York State Bank was the agent directly guilty of the neglect. That bank was employed to do the service by the plaintiff's agent, the Albany City Bank, as its agent, to which it was alone responsible for its acts and neglects, and for which the latter, according to the settled rule, was alone responsible to the plaintiff; there being no agreement to the contrary, express or implied. The gist of this action is the breach of duty arising out of an employment for hire, considering that breach of duty as tortious negligence, instead of considering the same circumstances as forming a breach of promise, implied from the same considerations of hire. The Bank of the State of New York, not having been employed by the bank as its agent, owed it no duty in respect to the draft, and therefore is not liable to the plaintiff for any neglect of duty which it owed to its principal, the Albany City Bank, under its contract with it."

The rule laid down is still the settled law of the state of New York (Commercial Bank v. Union Bank, 11 N. Y. 203; Ayrault v. Pacific

Bank, 47 N. Y. 570, 7 Am. Rep. 489; Naser v. First National Bank, 116 N. Y. 492, 22 N. E. 1077; St. Nicholas Bank v. State National Bank, 128 N. Y. 26, 27 N. E. 849, 13 L. R. A. 241; Revere Bank v. National Bank of Republic, 172 N. Y. 102, 64 N. E. 799), and is the rule adopted by the Supreme Court of the United States (Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722).

It having been established by the evidence that there was a special arrangement or agreement between the Akron National Bank and the First National Bank of Cleveland, under which the obligation of the Cleveland Bank was confined to due care in the choice of its correspondents, it follows that no cause of action by reason of the acts complained of accrued against the First National of Cleveland. The cases which we have examined have considered the liability of the first collecting bank. We have in the case at bar a chain of banks. The responsibility of the Cleveland bank was limited· to the proper choice of a collecting agent. It chose the Commercial National of Chicago. Under the doctrine of the Montgomery County Bank Case, by the special agreement between the Akron Bank and the Cleveland Bank, the Commercial Bank of Chicago became the agent of the Akron Bank, and, if the loss had occurred through its negligence, would have been responsible over. It must be borne in mind that the note which had been indorsed to the order of the First National of Cleveland was by it delivered to the Commercial of Chicago with the indorsement, "Pay to the order of any bank, bankers, brokers or trust company; all previous indorsements guaranteed" by the First National of Cleveland.

· The agreement was that the Cleveland Bank should be only held liable for due care in its choice of its correspondents. Its choice was made when it sent the note to the Chicago bank. What relations existed between .it and the Chicago bank does not appear from the record. In the absence of proof of a special agreement, we must assume that the commercial rule laid down in the Montgomery County Bank Case applies, and that it was responsible to the Cleveland bank, from whom it received the note, for negligence upon its part or that of its agent. But there was no agreement between it and the Akron Bank, and there was no authority from the Akron Bank to it, or from the Cleveland bank to it, to choose as the agent of the Akron bank a proper person, and thereby be exempted from all liability to.either of said banks for any neglect or default of said agent. The Chicago bank, in turn, sent the note to the defendant, and again there is in the record no evidence of any special agreement between the Chicago bank and the Peoria bank which affected the general rule of law heretofore indicated. The Peoria bank in its turn sent the note to the People's Savings & Trust Company at Galesburg, and there is no evidence of any special contract òr arrangement between those two banks.

The note was by its terms made payable at the Galesburg National Bank. It was not presented at said bank for payment, either upon the first occasion of its transmissal to the People's Savings & Trust

Company, nor upon the second time when it was protested. The rule of law in this state is that to hold an indorser the bill or note must be presented at the time and place where made payable. Parker v. Stroud, 98 N. Y. 379, 50 Am. Rep. 685; National Hudson River Bank v. Kinderhook & H. R. Co., 17 App. Div. 232, 45 N. Y. Supp. 588, affirmed 162 N. Y. 623, 57 N. E. 1118. Formal protest by a notary public is not essential to hold an indorser. It is mere proof. What is essential is presentment and demand at the time and place provided for in the instrument, followed by notice to the indorser of such presentment, demand, and nonpayment. So, notwithstanding the words "no protest" in the letter of transmissal from the defendant to the People's Savings & Trust Bank, it was still the duty of the said bank, having in its possession an indorsed note for collection, to have presented it upon the due day at the Galesburg National Bank where made payable. If it had been so presented and a notice of such presentation had been sent back down through the line of banks, the rubber company would have been held upon its obligation, irrespective of the fact that the note had not been protested, and it was the failure to present and notify which relieved the indorser, if it has been relieved. That failure was the failure of the Galesburg bank, and not of the Peoria bank, and it seems to us it cannot be said, in view of the facts of this case, that the words "no protest" in the defendant's letter constituted the proximate cause of the release of the indorser. So, if we assume that the special agreement between the Akron bank and the Cleveland bank had the force and effect of constituting each of the banks in the chain the agents of the Akron bank, then, each being responsible for its defaults and only its own defaults, it follows that the wrong party has been sued, the right of action, if any, being against the People's Savings & Trust Company of Galesburg for its failure to properly present the note at the time and place where and when made payable. If, on the other hand, the special agreement was exhausted when the Cleveland bank exercised its power to choose an agent and did not confer a similar power upon the Chicago bank, why then the Chicago bank, under the rule in the Montgomery County Bank Case, must be considered to be the collecting bank and responsible for any subsequent default. "The bank of the state of New York not having been employed by the (plaintiff) bank as its agent owed it no duty in respect to the draft, and therefore is not liable to the plaintiff for any neglect of duty which it owed to its principal, the Albany City Bank, under its contract with it." Montgomery Bank Case, supra. The Supreme Court of the United States, adopting the rule of the Montgomery County Bank Case, in the Exchange National Bank Case, supra, did so upon the ground that it was a general rule of commercial law. It seems to us that the banking community have a right to rely upon it. To sustain the judgment in this case would be to hold that the defendant without knowledge of the special agreement, though with knowledge of the general rule, was liable not to its immediate predecessor, but to a remote principal upon the doctrine of agency of an undisclosed principal and for a negligence not of its own but of its correspondent. If the plaintiff is right, and the

chain once broken all the links fall apart, and it has the right to sue any one, it should have proceeded against the People's Savings & Trust Company. If it is not right and the rule has only been affected so far as the Cleveland and the Chicago banks are concerned, it has no privity with the defendant, or right to sue it, even assuming, which we do not at all concede, that its act in allowing the words "no protest" to appear upon its letter of transmissal was the proximate cause of the loss.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered before another referee, with costs to the appellant to abide the event. All concur.