SAGERTON HARDWARE & FURNITURE CO. et al. v. GAMER CO. et al.†

(No. 7859.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 21, 1914. On Rehearing, April 25, 1914.)

1. BANKS AND BANKING (§ 171*)—COLLECTION OF CHECKS—AGENCY OF COLLECTING BANK —INDEPENDENT CONTRACTOR.

Plaintiff company, which made daily deposits with defendant bank in the course of business, deposited a check with it, without inquiry or instructions as to the manner of collection, taking credit on its passbook, and the bank made a debit charge on one of its general forms against plaintiff for a certain sum for collection charges on the check. *Held*, that the bank became an independent contractor for collecting the check, so that the banks selected by it for collecting the check was its agent for whose defalcations or failure to remit it was liable to plaintiff.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–617; Dec. Dig. § 171.*]

2. BANKS AND BANKING (§ 150*)—OVERDRAFT —AGREEMENT.

An agreement by a bank to permit a depositor to make an overdraft on the bank was equivalent to a loan to the depositor, so as to place the depositor in the position of having a checking credit with the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 455–464½; Dec. Dig. § 150.*]

On Rehearing.

3. BANKS AND BANKING (§ 171*)—COLLECTION —LIABILITY OF COLLECTING BANK.

The D. bank which received a check from another bank for collection, stipulated in accepting the check that all items not payable in the city, received for collection, were taken on condition that it should not be liable for the acts or omissions of any other banks or collector to whom the checks were transmitted, and, should the collecting party convert the proceeds, the amount for which credit had been given would be charged back. When it was advised by the bank actually making collection that the collecting bank had credited its account instead of remitting the money, the D. bank advised the bank from which it received the check of that fact, and also advised it that the item had been charged back to its account, credit having been given when the check was first received, and the original forwarding bank credited the D. bank with the item. *Held*, that upon rendering judgment against the original forwarding bank for failure of the collecting bank to remit, it was error to enter judgment over against the D. bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–617; Dec. Dig. § 171.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by the Gamer Company against Sagerton Hardware & Furniture Company, the Waggoner Bank & Trust Company, and others, in which the Waggoner Bank & Trust Company filed a cross-action against the City National Bank of Dallas. From a judgment for plaintiff against the Hardware Company, and for the City National Bank on the cross-action, plaintiff and defendant hardware company appeal. Reversed, and judgment rendered for plaintiff against the Waggoner Bank & Trust Company, and in favor of the Hardware Company, as against plaintiff, and judgment rendered in favor of the City National Bank of Dallas on the cross-action.

Theodore Mack, of Ft. Worth, for appellant Sagerton Hardware & Furniture Co. Capps, Cantey, Hanger & Short and David B. Trammell, all of Ft. Worth, for appellant Gamer Co. Wray & Mayer, of Ft. Worth, for appellee Waggoner Bank & Trust Co. Cockrell, Gray & McBride, of Dallas, for appellee City Nat. Bank.

SPEER, J. The Gamer Company, a corporation, sued the Waggoner Bank & Trust Company, the City National Bank of Dallas,

W. P. Caudle, and the Sagerton Hardware & Furniture Company to recover a balance of $1,460 alleged to be due upon a certain check drawn by the Sagerton Hardware & Furniture Company in its favor. The suit was dismissed as to the defendant Caudle. The plaintiff had judgment against the defendant Sagerton Hardware & Furniture Company, but failed to recover against the other defendants. The defendant City National Bank of Dallas also had judgment of course on the cross-action by the Waggoner Bank & Trust Company against it. The plaintiff and defendant Sagerton Hardware & Furniture Company both appeal.

We adopt the findings of fact of the trial court as follows:

"I. The court finds that on the 16th day of September, 1907, the defendants C. D. Haley, W. H. Littlefield, and Edgar Littlefield, composing the firm of the Sagerton Hardware & Furniture Company, purchased of the plaintiff the Gamer Company, for W. P. Caudle, certain goods, wares, and merchandise consisting of pipes, tanks, appliances, and attachments for windmills, one gasoline engine, and appliances and attachments therefor, and other articles for the installing of a waterworks plant at Sagerton, Tex., by the said W. P. Caudle, aggregating $2,500, upon a written contract or order for the same, and which goods were shipped out on the 8th day of October, 1907, and received at Sagerton on October 22, 1907, at which time the Sagerton Hardware & Furniture Company wrote plaintiff a letter which was as follows:

" 'Sagerton, Texas, Oct. 23, 1907.

" 'The Gamer Company, Fort Worth, Texas—Gentlemen: We herewith hand you statement and check to cover invoice of Oct. 8 outfit for Mr. Caudle.

| | |
|---|---|
| Invoice ......................... | $2,500 78 |
| By cash Caudle with order......... | $ 500 00 |
| " commission ..................... | 370 00 |
| " freight paid ................... | 194 90 |
| | $1,064 90 |
| Check to balance.................. | $1,435 88 |

" 'We are returning the freight bill and credit memorandum and assuring you that we will try to land another soon, we are, Very respectfully, Sagerton Hdw. & Furn. Co.

" 'P. S. Send receipt as the balance due on Caudle outfit as we don't want him to get next. Yours, S. H. & F. Co.'

"That as stated in said letter the check of the Sagerton Hardware & Furniture Company for $1,435.88 was inclosed therein being for the balance due for said goods as shown in the itemized statement set forth in the foregoing letter; the Sagerton Hardware & Furniture Company charging a commission of $370 for the sale of said goods.

"II. The court finds that the order for the goods in question was signed by W. P. Caudle, and contained the following excerpt: 'In consideration of which I or we hereby agree to pay you for the same at your office in Fort Worth, Tarrant County, Texas, as well as for all goods theretofore or hereafter bought or ordered from you, together with ten per cent. interest from maturity of bills and ten per cent. attorney's fees if placed in the hands of attorneys or judicial proceedings be used for collection.'

"III. The court finds that on September 28, 1907, the Sagerton Hardware & Furniture Company wrote the Gamer Company as follows:

" 'Sagerton, Texas, Sept. 28, 1907.

" 'The Gamer Company, Fort Worth, Texas—Gentlemen: Please ship out the outfit we bought for Mr. Caudle for waterworks here, at once and send the bill of lading to First Bank of Sagerton, Sagerton, Texas, to collect for us. Thanking you in advance for the favor and for all past favors, we are, Very respectfully, Sagerton Hdw. & Furn. Co.'

"IV. The court finds that for several months prior to the transaction in question the Gamer Company had been doing its banking business with the Waggoner Bank & Trust Company of Ft. Worth, Tex., was a reputable bank, and that the Waggoner Bank & Trust Company had as its correspondent through whom it made collections the City National Bank of Dallas, Tex., also a reputable banking institution.

"V. The court finds that there was no other er bank at Sagerton, Tex., save and except the First Bank of Sagerton, Tex., a private bank.

"VI. The court finds that the Gamer Company deposited the check of the Sagerton Hardware & Furniture Company for $1,435.88 with the Waggoner Bank & Trust Company, which check was made payable to the Gamer Company drawn on the First Bank of Sagerton, Tex., dated October 23, 1907, and signed by the Sagerton Hardware & Furniture Company, which deposit was made on October 25, 1907, the plaintiff indorsing the check, 'Pay to the order of the Waggoner Bank & Trust Company of Fort Worth, Texas,' the date of deposit being the date of receipt of said check. Signed: 'The Gamer Company.'

"VII. The court finds that the Gamer Company was making daily deposits with the Waggoner Bank & Trust Company and took credit for this check in its passbook, and that on the said October 25, 1907, the Waggoner Bank & Trust Company made a debit charge on one of its general forms for that purpose against the Gamer Company for $3.60, which was to be the collection charges on the Sagerton Hardware & Furniture Company check, and that on November 4, 1907, the Waggoner Bank & Trust Company made a debit charge against the Gamer Company of $1,460.88, the same being made up as shown by credit clip, of the check of the Sagerton Hardware & Furniture Company for $1,435.88 and another check for $25.00 drawn on the same bank; the

officers of the Waggoner Bank & Trust Company telling the plaintiff at the time it made this charge ticket that the payment of the check had been refused but that the check had not been returned to the Waggoner Bank & Trust Company yet.

"VIII. The court further finds that at the time said check for $1,435.88 was deposited the Gamer Company made no inquiry as to how the Waggoner Bank & Trust Company was going to collect the check, and gave no instructions, the plaintiff simply indorsing the check and depositing in the usual course of business and receiving the credit on the books of the bank in the usual way, and that the Gamer Company had no knowledge of what way or agency was employed by the Waggoner Bank & Trust Company in making collections of checks deposited with them upon other banks.

"IX. The court finds that when Mr. Gamer, president of the Gamer Company, received notice that the $1,435.88 check had been charged back against the account of the company he went to the Waggoner Bank & Trust Company, and was advised that the check had been sent for collection, but that the bank had notice that they could not pay right then, but that the bank would pay it, but that they did not know just when, referring to the Sagerton Bank, and that Mr. Gamer then insisted on getting back the check so that he could send some one to see about the matter; that said check was never at any time returned to the Gamer Company.

"X. The court further finds: That the Waggoner Bank & Trust Company forwarded the check to the City National Bank of Dallas, Tex., indorsing thereon: 'Pay to the order of any bank or banker (all prior indorsements guaranteed). Waggoner Bank & Trust Company'—such check being received by the City National Bank of Dallas, Tex., October 26, 1907, and that the said City National Bank of Dallas, Tex., indorsed the check, 'Pay to the order of any bank or banker, previous indorsements guaranteed. City National Bank of Dallas, Tex., Lynn P. Talley, Cashier,' and then immediately forwarded the check direct to the First Bank of Sagerton. That about November 1, 1907, not having received the money back on said check, E. S. Gillespie, then manager of the transit department of the City National Bank, telephoned the First Bank of Sagerton, and, not being able to talk direct, had to talk through Stamford, talking through the operator and asking about the letter containing said check, and which letter had several other items thereon, and was advised that the bank could not remit, and advising that the check in question had already been delivered to the depositor or canceled.

"XI. The court further finds that the City National Bank then notified the Waggoner Bank & Trust Company as follows: 'On the 26th we credited your account $1,435.88, same being an item on Sagerton, Tex. Sagerton advises us that the item has been paid, but that they cannot remit to cover same now, but will do so within the course of a few days. We are, therefore, charging your account with this amount and will be pleased to credit same to you upon receipt of remittance from Sagerton to cover.'

"XII. The court finds that the City National Bank of Dallas, Tex., and the Waggoner Bank & Trust Company made no other effort to get back the check for $1,435.88 which had been forwarded for collection, and that on the 29th day of October, 1907, the First Bank of Sagerton stamped the said check, Paid, charging the check to the account of the Sagerton Hardware & Furniture Company, and delivered the canceled check to the said Sagerton Hardware & Furniture Company, and also credited the account of the City National Bank of Dallas, Tex., with this item.

"XIII. The court further finds that the city National Bank of Dallas, Tex., had not authorized the First Bank of Sagerton to credit its account with the amount of said check, but took no other steps to collect the amount of said check, or to recover the same after having been advised that the check had been so credited to its account and the instrument canceled and delivered to the Sagerton Hardware & Furniture Company.

"XIV. The court finds that the Sagerton Hardware & Furniture Company was engaged in the Hardware & Furniture business at Sagerton, Tex.; and that the members of said partnership were the said C. D. Haley, W. H. Littlefield, and E. B. Littlefield; and that in July, 1907, the said Sagerton Hardware & Furniture Company bought two car loads of furniture; and that in order to get a discount upon said goods the said Sagerton Hardware & Furniture Company requested R. E. Caudle, the cashier of the First Bank of Sagerton, for a loan in order to meet the bills maturing for said furniture October 1st; and that the said cashier replied that he was not in position at that time to grant that much money, but for them to go ahead and issue the checks for the furniture, and would permit them to overdraw for this purpose; and that they would thereafter see about arranging for a loan; and that the Sagerton Hardware & Furniture Company did draw checks for various amounts against their account between the 1st day of October and the 23d day of October, which checks accumulated in the First Bank of Sagerton, Tex.; and that on the 30th day of October, 1907, the First Bank of Sagerton charged to the Sagerton Hardware & Furniture Company these checks, among them the $1,435.88 check sent to the Gamer Company, aggregating in all $4,085.95, and which caused an overdraft of said account in the sum of $1,514.05; and that on November 4, 1907, the Sagerton Hardware & Furniture Company executed their negotiable promissory note to the First Bank of Sagerton for $1,500 due on demand for which they were credited upon their account.

That the checks which caused the overdraft were the checks issued by the Sagerton Hardware & Furniture Company in payment of the bills for furniture, and for which they had asked to be permitted to overdraw their account.

"XV. The court further finds that when the goods which had been shipped by plaintiff were delivered to W. P. Caudle on the 22d day of October, 1907, the said W. P. Caudle gave to the Sagerton Hardware & Furniture Company his check for $1,805 in payment of the balance due upon said goods, and this check was on said date deposited by the Sagerton Hardware & Furniture Company with the First Bank of Sagerton, and credited to the account of the Sagerton Hardware & Furniture Company; that at the time said deposit was made the Sagerton Hardware & Furniture Company had the outstanding checks for furniture given prior to that date, and knew that it did not have enough money in the bank to pay the same, and that when the check for $1,435.88 was forwarded to the Gamer Company that the money was not in the bank to pay this check and the other checks which had been previously drawn against their account; that the checks for the furniture which had been issued prior to October 23, 1907, upon reaching the First Bank of Sagerton had been placed by the cashier in a drawer until he marked the same, Paid, and charged them to the account of the Sagerton Hardware & Furniture Company on October 29, 1907.

"XVI. That after the Sagerton Hardware & Furniture Company executed the note for $1,500, the said note was sold before maturity by the First Bank of Sagerton to the First National Bank of Emma, Tex., and was renewed about the 1st day of January, 1908, and thereafter paid by the Sagerton Hardware & Furniture Company.

"XVII. The court finds that the First Bank of Sagerton was doing business through the Farmers' & Merchants' National Bank of Abilene, Tex., and that about October 15, 1907, its account with the said bank at Abilene was overdrawn somewhere in the neighborhood of $38,000 or $40,000, and that the First Bank of Sagerton had most of this money out in cotton, and as the cotton came in and as other money came in, the First Bank of Sagerton was using all of these funds to reduce its overdraft upon the Farmers' & Merchants' National Bank of Abilene; that checks had been accumulating in the First Bank of Sagerton from various banks which had sent the same in for collection, and in order to clear the First Bank of Sagerton of said checks, and which checks possibly aggregated $25,000 or $30,000 the said First Bank of Sagerton credited the banks which had sent in said checks for collection, including those of the Sagerton Hardware & Furniture Company given out for furniture and the check of the Gamer Company in question; this action being taken

about the 29th day of October, 1907; that during this time the First Bank of Sagerton was paying checks which were presented over the counter for collection; that if the check of $1,435.88 of the Gamer Company had been presented at the window of the bank up until about the 10th of November, 1907, the First Bank of Sagerton would have had the cash on hand, and did have the cash on hand, to have paid the same over the counter.

"XVIII. The court further finds that between the 20th and 25th of October the First National Bank of Ft. Worth, Tex., sent a bunch of checks, aggregating between $2,000 and $3,000 to the First National Bank of Rule, Tex., for collection, and that Morris Manning, the cashier of the First National Bank of Rule, Tex., presented said checks in person at the window of the First Bank of Sagerton, and received the cash on the same.

"XIX. The court further finds: That on November 16, 1907, the Gamer Company wrote to the Sagerton Hardware & Furniture Company, advising them that it had not received their money upon the check in question, and that under date of November 18, 1907, the Sagerton Hardware & Furniture Company replied as follows:

" 'Sagerton, Texas, Nov. 18, 1907.

" 'The Gamer Company, Fort Worth, Texas—Gentlemen: In reply to yours of the 16th inst. will say that I have just been to the bank to ask about this matter. They had charged the check to our acct. and returned same to us canceled and paid, and the Pres. told me that they had made settlement with the Sweetwater exchange from Sweetwater, and told me too, that he was going to Sweetwater to-day to see that it was done. I hope that you will have your money by the time this reaches you. Very respectfully yours, Sagerton Hardware & Furn. Co., per W. H. Littlefield.' That after the receipt of the letter in question the Sagerton Hardware & Furniture Company made no effort to secure from the First Bank of Sagerton the money called for by the check of $1,435.88, and that the said amount of $1,435.88 was never paid to the Gamer Company.

"XX. The court further finds that at the time the check in question was forwarded to the First Bank of Sagerton for collection the American Express Company had an office and an agent at Sagerton, and that there was also a bank at Rule, Tex., located nine miles from Sagerton on the Orient Railway, and that there were three banks at Haskell, 18 miles east from Sagerton by dirt road, and that there were three banks at Stamford, located 15 miles from Sagerton by railroad, and also at Hamlin, located 11 miles from Sagerton by railroad; that during the early part of the year 1907, collection had also been made from the Sagerton Bank by C. H. Burden; such collections having been sent to Mr. Burden by the First National Bank of Stamford.

"XXI. The court further finds that the First Bank of Sagerton went into bankruptcy about the 4th or 5th day of December, 1907, and that said bankruptcy estate thereafter paid 42⅓ per cent. on the claims of the creditors of said bank.

"XXII. The court finds that the Sagerton Hardware & Furniture Company continued to deposit with the First Bank of Sagerton up until the bank went into bankruptcy, and made one deposition December 9, 1907, of $91 after the receiver appointed by the bankruptcy court had taken charge of the bank.

"XXIII. The court finds that after the First Bank of Sagerton had gone into bankruptcy, the City National Bank of Dallas, Tex., made claim in said bankruptcy estate for the amount of said check of $1,435.88, such action being taken with the consent and agreement of all parties, both plaintiff and defendants, to said suit, and that from said bankruptcy estate the amounts were paid on said claim by the trustee in bankruptcy as follows:

| | |
|---|---:|
| August 3, 1908 | $ 43 82 |
| February 25, 1909 | 438 26 |
| September 1, 1909 | 58 40 |
| June 15, 1910 | 73 04 |
| January 2, 1913 | 4 89 |
| Aggregating | $618 41 |

—and for which amount the claim on account of said check should be credited, leaving a balance due of principal and interest aggregating $1,136.10.

"XXIV. The court finds that when the Sagerton Hardware & Furniture Company received the check from W. P. Caudle for the sum of $1,805, the said Sagerton Hardware & Furniture Company deposited said check with the First Bank of Sagerton to their account, knowing that their account with said bank was already overdrawn to the amount of checks for furniture theretofore given, and that there would not be a sufficient balance remaining to said account to pay said check of $1,435.88 drawn in favor of the Gamer Company.

"XXV. The court further finds that after the Waggoner Bank & Trust Company was advised by the City National Bank of Dallas, Tex., that it had not received the remittance of $1,435.88 covering the check forwarded to the First Bank of Sagerton for collection, and that the check had been canceled and delivered to the Sagerton Hardware & Furniture Company, said Waggoner Bank & Trust Company made no further effort to secure possession of said check nor for the money called for by said check, and did not attempt to return said check to the plaintiff, nor the money called for by the same, and that it charged up the account of the Gamer Company with the amount of said check and the additional charge of $3.60 for the collection of the same, and did not at any time or in any way pay to the Gamer Company the amount of said check."

[1] Under the facts as found the Waggoner Bank & Trust Company became an independent contractor for the purpose of collecting the check in question, and the agents selected by it for the accomplishment of this purpose became its agents for whose defalcations it is in law responsible. State Natl. Bank of F. W. v. Thomas Mfg. Co., 17 Tex. Civ. App. 214, 42 S. W. 1016. Now, the findings show that the First Bank of Sagerton, Tex., which was called upon by the City National Bank of Dallas, Tex., the agent of the Waggoner Bank & Trust Company, to make the collection of this check, did so in the usual and customary manner, evidently in the way contemplated by the parties the same should be done, but failed to remit the collection to its correspondent, the City National Bank of Dallas, Tex. Under these circumstances, the proceeds having been lost through the failure of the Sagerton Bank, the Waggoner Bank & Trust Company became liable to the Gamer Company, and the City National Bank in turn became liable to it for the amount of the loss.

[2] While it is true that the Sagerton Hardware & Furniture Company's account was overdrawn at the time the check in controversy was presented for payment, the findings yet show that an arrangement had been made by it with the Sagerton Bank for an overdraft. This was equivalent to a loan, and the company, therefore, had at the time a credit with the bank against which it was authorized to check. When the check, therefore, was presented and paid by the Sagerton Bank, the collection was complete, and there remained nothing to be done but to transmit the proceeds to the City National Bank of Dallas. The question of negligence then becomes an immaterial issue in the case, and need not be considered. The Waggoner Bank & Trust Company is liable at all events because its agent had collected the proceeds of the check and failed to account for it. Smith Roofing & Contracting Co. v. Mitchell, 117 Ga. 772, 45 S. E. 47, 91 Am. St. Rep. 217. If our conclusion that the facts stated show an actual collection of the check be correct, it of course follows that judgment should also be rendered in favor of appellant, the Sagerton Hardware & Furniture Company, for it has already once paid the debt. The judgment of the district court is therefore reversed, and judgment here rendered in favor of appellant the Gamer Company against the Waggoner Bank & Trust Company for the balance due on said check, to wit, $1,136.10, together with interest thereon at the rate of 6 per cent. per annum from March 24, 1913, together with all costs, that the Waggoner Bank & Trust Company have judgment for a similar amount and costs over against the City National Bank of Dallas, and that the appellant the Gamer Company take nothing as against the appellee Sagerton Hardware & Furniture Company, and

that the Sagerton Hardware & Furniture Company recover all its costs against the Gamer Company.

Reversed and rendered.

### On Rehearing.

[3] We were in error in rendering judgment over against the City National Bank of Dallas in favor of the Waggoner Bank & Trust Company on its cross-plea, inasmuch as the terms of the agreement upon which the City National Bank accepted the checks for collection precluded recovery. In accepting the checks for collection it was stipulated by the City National Bank as follows: "All items not payable in Dallas received by this bank for credit or collection are taken upon the express condition that this bank is not to be held liable for the acts or omissions of any other banks or collectors to whom they may be hereafter transmitted, or for loss in transmission, the liability of this bank being hereby limited to its own acts and should the collecting party convert the proceeds or remit the checks or drafts which are thereafter dishonored, the amount for which credit has been given will be charged back. We will use our discretion as to sending direct or through intermediary banks for collecting, acting as agent only and assuming no responsibility beyond carefulness in selecting such agents." It seems to be undisputed in the evidence that as soon as the City National Bank was informed that the collecting bank had credited its account instead of remitting the money, it advised the Waggoner Bank & Trust Company of that fact, and also advised it that its account was being charged with that amount, and the Waggoner Bank & Trust Company credited the City National Bank with the item. Under these circumstances the Waggoner Bank & Trust Company was not entitled to judgment over against the City National Bank of Dallas, and our former judgment in this respect is set aside and judgment rendered in favor of the City National Bank of Dallas upon such cross-plea.

The motion for a rehearing by the Waggoner Bank & Trust Company is overruled.