# FARMERS STATE BANK OF DES LACS, NORTH DAKOTA, a Domestic Corporation, Appellant, v. UNION NATIONAL BANK OF MINOT, NORTH DAKOTA, a National Banking Corporation, Respondent.

### (173 N. W. 789.)

**Negotiable instruments — collection — special agreement governs.**

1. The liability of a bank receiving commercial paper for collection depends upon the terms of the contract. Where there is no special agreement, the law implies the terms of the contract, but where the parties at the outset of the transaction make a special agreement, the rights and liabilities of the parties are governed by the terms fixed by the parties in such special agreement.

**Banks and banking — liability of bank in collecting check.**

2. Where defendant bank had been acting as plaintiff's correspondent for a long time, with the understanding that it should not be liable for the negligence of its subagents, and on receipt of the item in controversy the defendant, in accordance with its uniform prior practice, acknowledged receiving the check for collection, and incorporated in the body of the receipt a statement that "for collection of all items outside of the city" it would observe due diligence in endeavoring to select responsible agents, but would "not be liable in case of their failure or negligence," nor for employing a circuitous route, it was not liable for the failure to collect the check, due to negligence of a subagent.

Opinion filed July 1, 1919.

Appeal from the District Court of Ward County, *Leighton*, J.

Plaintiff appeals from a judgment and from an order denying a motion for a new trial.

Affirmed.

*McGee & Goss,* for appellant.

Section 6956, C. L. "Where it is payable on demand, presentment must be made within a reasonable time after its issue." Pickett v. Baird Inv. Co. 22 N. D. 343, 2 N. & C. C. A. 722.

The principle of law, that a bank is liable for the negligence of correspondents selected by it, seems to have been originally established in the English case: Van Wert v. Wooley, 3 Barn. & C. 349.

The above rule has been adopted in the following cases: Downer v. Madison County Bank, 6 Hill, 646; Montgomery County Bank v. Albany City Bank, 7 N. Y. 459; Commercial Bank v. Union Bank, 19 Barb. 391; McBride v. Illinois Nat. Bank, 138 App. Div. 339, 121 N. Y. Supp. 1040; Second Nat. Bank v. Bank of Alms, 99 Ark. 386, 138 S. W. 472; Reeves v. State Bank, 8 Ohio St. 468; American Exp. Co. v. Haire, 21 Ind. 4; Martin v. Hiberin, 127 La. 301, 53 So. 572; Simpson v. Waldby, 63 Mich. 439, 30 N. W. 199; Titus v. National Bank, 36 N. J. L. 558; Streiesguth v. National German American Bank (Minn.) 44 N. W. 497; Ft. Dearborne Nat. Bank v. Security Bank (Minn.) 91 N. W. 257; Harter v. Bank of Brunson, 92 S. C. 440, 74 S. E. 366; City Nat. Bank v. Cooper, 91 S. C. 91, 75 S. E. 696; California Nat. Bank v. Utah Nat. Bank, 190 Fed. 318; Exchange Nat. Bank v. Third Nat. Bank, 113 U. S. 278, 28 L. ed. 722; Commercial Nat. Bank v. Red River Valley Nat. Bank, 8 N. D. 362.

The contrary doctrine, in that a bank receiving a draft or bill of exchange in one state for collection in another state from a drawee residing there is liable for neglect of duty occurring in its collection whether arising from the default of its own officers, or from that of its correspondents in the other state, or an agent employed by such correspondent, in the absence of any express or implied contract varying such liability, is established by decisions in New York: Allen v. Bank, 22 Wend. 215; Bank v. Smith, 3 Hill, 560; Montgomery Co. Bank v. Albany City Bank, 7 N. Y. 659; Commercial Bank v. Union Bank, 11 N. Y. 203; Ayrault v. Bank, 47 N. Y. 570; Titus v. Bank,

6 Vroom, 598; Wingate v. Bank, 10 Pa. 104; Reeves v. State Bank, 6 Ohio St. 463; Tyson v. State Bank, 6 Blackf. 226.

It has been so held in the second circuit, in Kent v. Bank, 13 Blatchf. 237; and the same view is supported by Taber v. Perrot, 2 Gall. 565, and by the English cases of Van Wert v. Wooley, 3 Barn. & C. 439, and Mackery v. Banamys, 9 Clark & F. 818.

*Greene & Stenersen,* for respondent.

The principle that whosoever appoints an agent to do something which obviously and from its inherent nature can only be done by a substitute must be deemed to have accepted and authorized the employment of a substitute by the agent is clearly depended upon to support the Massachusetts rule. In the cases where that rule has been adopted and applied it is asserted or assumed that the collection, through the agency of a local bank, of an out-of-town check, bill of exchange, certificate of deposit, or promissory note, is, in each instance, a transaction in which the necessity for the bank to employ a correspondent or agent other than its own officers and immediate servants inheres in the very nature of the undertaking. Note to Brown v. People, 52 L.R.A.(N.S.) 608.

The general rule of law is that an agent is not responsible for the negligence or want of skill of a subagent employed by him, where such employment was necessary to the transaction of the business intrusted to him, and he has used reasonable diligence in his choice as to the skill and ability of the subagent. Barnard v. Coffin, 141 Mass. 37, 55 Am. Rep. 443, 6 N. E. 364, in which case the court said:

The doctrine of these cases is also embodied in the statutory law of this state. Rev. Codes, § 4348.

It therefore clearly appears that this court not only repudiates the New York doctrine, but expressly adopts what is called the Massachusetts rule, and cited the Code of our own state as an expression of the latter rule. Davis v. King (Conn.) 50 Am. St. Rep. 104; Givan v. Bank of Alexandria (Tenn.) 47 L.R.A. 270; Beddel v. Harbine Bank (Neb.) 86 N. W. 1060; Bank v. Sprague, 15 L.R.A. 498; Fanset v. Garden City Bank (S. D.) 123 N. W. 686; Guelick v. National State Bank (Iowa) 9 N. W. 328; Mechem, Agency, §§ 332, 1314; Brady, Bank Checks, §§ 203, 204; 5 Cyc. §§ 502–504.

CHRISTIANSON, Ch. J.   The controversy before us involves the liability of the defendant upon a check which it received from the plaintiff for collection in the ordinary course of banking business.   The material facts are not in dispute.   It appears that on or about September 8, 1913, the Blaisdell-Bird Company received a check from C. R. Verry, for the sum of $324.35, drawn on the Farmers & Merchants Bank of Park River.   On September 11, 1913, the Blaisdell-Bird Company delivered the check to the plaintiff bank for deposit, and its checking account in said bank was duly credited with the amount of the check.   The plaintiff bank in due course forwarded the check to its correspondent, the defendant bank.   It was received by the defendant on September 13, 1913.   And the defendant promptly forwarded it in due course to its correspondent, First National Bank of Fargo. The First National Bank of Fargo sent it to the City National Bank of Duluth.   The City National Bank of Duluth sent it to the Northwestern National Bank of Minneapolis.   The evidence shows that the Farmers & Merchants Bank of Park River on September 18, 1913, received a remittance letter from the Northwestern National Bank of Minneapolis, which purported to accompany the check in controversy. The Farmers & Merchants Bank of Park River claimed, and the testimony of its cashier tended to show, that the check was not inclosed with the remittance letter, and that that bank has never received the check.   The account of Verry became exhausted by checks presented against it on September 18, 1913; but the cashier of the Farmers & Merchants Bank of Park River testified that if the check in controversy had been inclosed with the remittance letter it would have been paid. The trial court found "that said check was never paid nor returned to the plaintiff or the defendant, and was lost while in the possession of either the Farmers & Merchants Bank of Park River, on which it was drawn, or while in the possession of the Northwestern National Bank of Minneapolis."   That finding is in accord with the evidence.

The evidence shows, and the trial court found, that the defendant had been plaintiff's correspondent for many years prior to September 13,1913, and still remained such correspondent at the time of the trial. The undisputed evidence also shows that it was the uniform custom of the defendant bank to acknowledge the receipt of checks and other items, received by it for collection from the plaintiff and other correspondent

banks, by means of a written receipt, which contained the following provision: "All items (except checks on us) are credited subject to payment. For the collection of all items outside of the city we will observe due diligence in endeavoring to select responsible agents, but will not be liable in case of their failure or negligence, nor for the loss of items in the mail, nor for employing a circuitous route of collection, nor for sending direct to the bank upon which item is drawn." Upon receipt of the check in controversy the defendant bank, in accordance with its uniform custom and practice, acknowledged receipt thereof by means of a receipt containing the provision hereinabove set forth. The evidence clearly shows that the defendant bank in forwarding the check to the First National Bank of Fargo followed the usual custom, and did exactly what the plaintiff might reasonably have expected it to do. In fact the vice president of the plaintiff bank in his testimony expressly admitted that the defendant bank had not violated any custom or usage of banking in so forwarding the check.

The Blaisdell-Bird Company brought suit against the plaintiff and recovered judgment. The plaintiff thereupon brought this action. The case was tried to the court without a jury, and resulted in a judgment in defendant's favor for a dismissal of the action. Plaintiff has appealed from the judgment and from the order denying its motion for a new trial.

In this country there are two conflicting theories as to the liability of banks which undertake the collection of commercial paper at a distance. One has become known as the "New York rule," and the other as the "Massachusetts rule." Under the New York rule the first bank is responsible for the conduct of its correspondents and subagents as fully as though it had performed the entire service itself. Under the Massachusetts rule a bank which receives for collection out-of-town commercial paper is responsible only for its own negligence, and not for the negligence of its correspondents or subagents. Under this rule its duty is done when it exercises due care in the selection of a proper reputable subagent and duly transmits the paper to such subagent. An extended discussion of the two rules, and a review of the different authorities supporting each, is found in Morse on Banking, 5th ed., §§ 268–287, and also in a note appended to Brown v. People's Bank, 52 L.R.A.(N.S.) 608. In our opinion this case does

not necessarily depend upon the acceptance of either of the two conflicting rules, and the court is not required to express its approval of either rule. Both rules recognize that the extent of liability is measured by the terms of the contract. The real difference of opinion is with respect to what agreement the law implies where a bank takes out-of-town commercial paper for collection. Of course where there is an express agreement or understanding, the rights and liabilities of the parties are governed thereby. This is recognized by the different authorities under both rules. See Morse, Bkg. 5th ed. §§ 269 et seq.; McBride v. Illinois Nat. Bank, 138 App. Div. 339, 121 N. Y. Supp. 1041, 163 App. Div. 417, 148 N. Y. Supp. 654; First Nat. Bank v. City Nat. Bank, 106 Tex. 297, L.R.A. 1918E, 336, 166 S. W. 629, — Tex. Civ. App. —, 168 S. W. 415; Sagerton Hardware & Furniture Co. v. Gamer Co. — Tex. Civ. App. —, 166 S. W. 428; Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 28 L. ed. 722, 5 Sup. Ct. Rep. 141. See also authorities collated in note in 52 L.R.A.(N.S.) page 634. There is probably no stronger authority in favor of the so-called New York rule than Exchange Nat. Bank v. Third Nat. Bank, supra. Yet in that case it is said: "And, while the rule of law is thus general, the liability of the bank may be varied by consent, or the bank may refuse to undertake the collection. It may agree to receive the paper only for transmission to its correspondent, and thus make a different contract, and become responsible only for good faith and due discretion in the choice of an agent."

In this case the defendant was not to receive any compensation for making collection of the check in controversy. It was shown that there prevailed a general and well-understood custom among banks receiving collections upon outside points not to effect the collection themselves, but through the agency of other banks selected by them. The plaintiff was well aware of the fact that the defendant accepted such collections only upon the condition that it would "observe due diligence in endeavoring to select responsible agents," but would "not be liable in case of their failure or negligence," "nor for employing a circuitous route of collection." And the defendant gave specific notice that the check in controversy was accepted for collection upon such conditions. The defendant was clearly entitled to attach such conditions to its undertaking, and no good reason can be urged why

such conditions should be denied effect as to a party who must have understood them, and in effect expressed its assent to and acceptance thereof. In our opinion the evidence in this case shows a special agreement between the plaintiff and the defendant, and the rights of the plaintiff and the liabilities of the defendant are governed by the terms of such agreement. California Nat. Bank v. Utah Nat. Bank, 111 C. C. A. 218, 190 Fed. 318; First Nat. Bank v. City Nat. Bank, 106 Tex. 297, L.R.A. 1918E, 336, 166 S. W. 689; McBride v. Illinois Nat. Bank, 138 App. Div. 339, 121 N. Y. Supp. 1041; Youmans Jewelry Co. v. Blackshoar Bank, 141 Ga. 357, 80 S. E. 1005. As it has not been shown that defendant in any manner violated the terms of the agreement, it follows that plaintiff has not established a cause of action against the defendant.

The plaintiff also contends that the defendant is bound by the judgment which the Blaisdell-Bird Company recovered against the plaintiff. Little or no argument has been advanced in support of this contention, and, under the established facts, the contention is obviously without merit.

It follows from what has been said that the judgment and order appealed from must be affirmed. It is so ordered.

GRACE, J. I concur in the result.