REES, TAYLOR COMPANY, INCORPORATED, PLAINTIFF-RESPONDENT, v. THE MAYFLOWER DINERS, INCORPORATED, SAMUEL KULLMAN AND ALFRED PLATON, DEFENDANTS; SAMUEL KULLMAN, APPELLANT.

Submitted February 18, 1933—Decided April 27, 1933.

For the appellant Samuel Kullman, *Green & Green* (*Ira J. Kalchen* and *Nelson K. Mintz,* of counsel).

For the respondent, *James J. McGoogan.*

The opinion of the court was delivered by

TRENCHARD, J.   Samuel Kullman (hereinafter called the defendant) endorsed a series or set of ten promissory notes for $100 each, all dated August 15th, 1930, payable to the plain-

tiff at the First-Mechanics National Bank of Trenton, the first maturing September 15th, 1930, and the others on the fifteenth of each month thereafter, and all made by The Mayflower Diners, Incorporated. In each of the ten notes was this language: "One of a series of 10 notes, maturing September 15th, and one on the 15th of each month thereafter to and including June 15, 1931. Failure to pay any note when due, all others become due and payable on demand."

This suit was begun on September 29th, 1931, on notes which matured respectively December 15th, 1930, and monthly thereafter, and which were unpaid.

Circuit Court Judge Oliphant, to whom the case had been referred for trial, sitting without a jury, entered judgment against the endorser Kullman alone (the maker and the other endorsers not having been served with process), and he appeals, contending that the judge erred in refusing to nonsuit and to direct a verdict for the defendant.

We think that refusal was not erroneous.

The defendant first contends that plaintiff by its institution of a prior suit on February 20th, 1931, on these notes, after the note maturing December 15th, 1930, was unpaid, accelerated the due date of the notes then remaining unpaid, and by failure at that time or within twenty-four hours thereafter to make presentment and give notice of dishonor of the then remaining unpaid notes, discharged the defendant endorser from all liability.

We think not. The suit which was begun on February 20th, 1931, was dismissed on motion of the defendant on August 11th, 1931, because the complaint did not state a legal cause of action, the notes not having been presented to the bank for payment. Meanwhile, on March 16th, 1931, the notes due March 15th and monthly thereafter, were duly presented for payment and due notice of dishonor was given to the endorsers; and on September 23d, 1931, after the dismissal of the prior suit, the other notes in suit were duly presented for payment at the bank and due notice of dishonor was likewise given.

We have pointed out that each one of this set or series of

notes was payable at a named bank at maturity, and in each was this language: "One of a series of 10 notes, maturing September 15th, and one on the 15th of each month thereafter to and including June 15th, 1931. Failure to pay any note when due, all others become due and payable on demand." Therefore, the maker's failure to pay the fourth note on the maturity date of December 15th, 1930, made the remaining notes payable on demand. Since no demand had been made when the prior suit was begun on February 20th, 1931, that suit was properly dismissed, and the mere institution of that suit did not accelerate the maturities of the remaining notes before demand for payment had been made at the bank where they were payable, nor did it constitute a defense to this subsequent suit on such remaining notes after such a demand, within a reasonable time, had been made upon them and due notice of dishonor had been given.

The only lawful basis of a suit against the endorser on these demand notes, was to first present them to the bank for payment. The Negotiable Instruments act (3 *Comp. Stat., p.* 3744) provides that presentment for payment to be sufficient must be made at a proper place. Section 72. Presentment is made at the proper place, where a place of payment is specified in the instrument, and it is there presented. Section 73.

The first suit was merely premature. It is well settled that notice of dishonor could be given legally, only after demand at the bank.

In 8 *C. J.* 652, it is said: "By analogy to the rule that demand made before the paper becomes due is invalid, notice given before the paper becomes due is necessarily so, since every notice to be available must be based on a legal demand, and the fact that notice is given prematurely by a mistake in reckoning the date of the maturity of the paper creates no exception to the rule." Citing among other cases *Hagerty* v. *Engle,* 43 *N. J. L.* 299.

When the note for $100 matured on December 15th, 1930, plaintiff could not forsee that it would not be paid, and consequently was not, in any sense, obliged to present the remaining notes for payment on that day, but was compelled

to await payment or non-payment of that note before the remaining notes could be turned into demand notes. Then, when plaintiff found that the note maturing on December 15th, 1930, was not honored, it had the undoubted right to demand payment of the remaining notes within a reasonable time after they became demand notes.

In *First National Bank of Belmar* v. *Osborne*, 104 *N. J. L.* 112, an almost identical situation arose, and this court affirmed judgment for the holder of the note against the endorser, where the bank first entered suit against the endorser on a demand note on December 4th, 1924, and then discontinued it, and on October 23d, 1925, the note was protested and then on February 15th, 1926, the second suit was begun on which judgment for the payee was affirmed.

To the same effect are well considered cases in New York. Thus, in *National Hudson River Bank* v. *Moffett*, 17 *App. Div.* 232; *affirmed,* 162 *N. Y.* 623, it was held that "a letter written upon the part of the bank, which is the holder of a promissory note payable at the bank on demand, to the treasurer of a corporation which made the note, stating that the bank will ask payment of the note on a future day named in the letter, not followed upon the day named by any demand of payment and protest of the note, does not constitute a defense to an endorser of the note."

Again, in *Parker* v. *Stroud*, 98 *N. Y.* 379, it was held that: "No cause of action arises against an endorser of a promissory note payable on demand, at a place specified, until demand is made in compliance with the terms of the contract and due notice of non-payment; a demand by letter is insufficient. The holder of the note is not chargeable with neglect for omission to make such demand within any particualr time. Until, therefore, demand is made at the place named, the statute of limitations does not begin to run in favor of the endorser." That case was cited with approval in *Gilpin* v. *Savage*, 201 *N. Y.* 167. See, also, *McBride* v. *Illinois National Bank*, 121 *N. Y. Supp.* 1041.

The defendant says that the instruments in suit are not demand notes; but the parties expressly made them payable

on demand, and the language in each note clearly negatives such a strained construction, particularly in view of section 7 of the Negotiable Instruments act (3 *Comp. Stat., p.* 3735) providing that a note is payable on demand "where it is expressed to be payable on demand * * *."

Lastly the defendant contends that demand for payment of the notes in question was not made within a reasonable time.

But that we think in the circumstances of the present case was a jury question. The trial court, sitting as a jury, found that the demands were made within a reasonable time, and that finding was based on these undisputed facts: the endorser, Kullman, knew, when he signed the ten notes, that the last one matured June 15th, 1931, three months after the demand on some of the notes was made at the bank and about three months before the demand on the remainder of the notes was made; he wrote a letter to the plaintiff on January 6th, 1931, in which he promised that "your note will be taken care of not later than next week;" his agent promised in December 1930, when the fourth note was due that "it would be taken care of." Moreover, the trial judge had before him the fact that one suit had been started on February 20th, 1931, and that litigation concerning the notes was constant after that date. Of course, where, as here, a note is "payable on demand, presentment must be made within a reasonable time after its issue * * *." Negotiable Instruments act (3 *Comp. Stat., p.* 3744, § 71). "In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments and the facts of the particular case." Section 193. In *Gershman* v. *Adelman,* 103 *N. J. L.* 284, it was held that "under the Negotiable Instruments law (3 *Comp. Stat., p.* 3757, § 193) what is a 'reasonable time' or an 'unreasonable time' having regard 'to the facts of the particular case,' for presenting a promissory note, 'payable on demand, with interest,' under the circumstances of this case, is a question of fact to be submitted to the jury under instruction from the court." See, also, *First National Bank of Belmar* v. *Osborne,* 104 *N. J. L.* 112, where this court, in

referring to *Foley* v. *Emerald Brewing Co.*, 61 *Id.* 428, and similar cases on which defendant relies, held that: "the law laid down in this line of cases has been modified by the Negotiable Instruments act of this state," quoting section 71 (3 *Comp. Stat., p.* 3734) of the act, and that "the question of what is a reasonable time or an unreasonable time" is one for the jury under the guidance of the court. Of course, a determination of a question of fact by the trial court, sitting without a jury, is final, when, as here, there is legal evidence to support it. *Upton* v. *Slater*, 83 *Id.* 373.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR WELLS, DILL, JJ. 15.

*For reversal*—None.