CHARLES A. VERRET, Respondent, v. STATE BANK OF ROLLA, a Banking Corporation of Rolla, North Dakota, Appellant.

(180 N. W. 714.)

**Banks and banking — evidence held not to show negligence of forwarding bank or its correspondents in sending check for collection.**

In this country there are two different theories as to the liability of banks which undertake the collection of commercial papers at a distance. One has become known as the "New York rule," and the other as the "Massachusetts rule." Under the so-called "New York rule," the bank which receives such paper in the first instance is responsible for the conduct of its correspondents and subagents as fully as though it had performed the entire service itself. Under the "Massachusetts rule" the bank which receives out-of-town paper for collection is responsible only for its own negligence, and not for the negligence of its correspondents or subagents.

In the instant case it is *held* that the evidence does not justify a recovery under either rule:

Opinion filed November 16, 1920.   Rehearing denied December 21, 1920.

From a judgment of the District Court of Rolette County, *Buttz,* J., defendant appeals.

Reversed.

*Fred E. Harris,* for appellant.

The plaintiff has certainly not shown himself to have been injured in any way in the transaction or suffered any damage or loss on account of the same.   The plaintiff, therefore, has no standing in court under the undisputed testimony in this case.   Balcombe v. Northrup, 9 Minn. 172; Morton v. Stone (Minn.) 39 N. W. 496; Morton v. Hagerman (Minn.) 39 N. W. 497; Steiner Bros. v. Clisby (Ala.) 15 So. 612.

The undisputed testimony shows that at the time the check was drawn the maker had no funds on hand in the Rolette County Bank to meet it; under such circumstances presentment of the check is excused.   5 Cyc. 533; 5 R. C. L. 504.

It must be presumed it was intended by the customer of the bank that the collection would be made in the ordinary and usual manner, and in accordance with the general usage and custom prevailing among banks.   If the collection is made in accordance therewith, the bank has performed its undertaking.   Farmers Bank & T. Co. v. Newland (Ky.) 31 S. W. 38; First Nat. Bank v. City Nat. Bank (Tex.) 34 S. W. 458; Given v. Bank of Alexandria (Tenn.) 52 S. W. 923; Nebraska Nat. Bank v. Logan (Neb.) 52 N. W. 808.

*John A. Stormon* and *Charles A. Verret,* for respondent.

Under the New York rule the forwarding bank makes the local agent to whom the collection is intrusted its own subagent, and is liable for any neglect on the part of such subagent.   3 R. C. L. p. 622; Streissguth v. National German American Bank, 44 N. W. 797; note in 52 L.R.A.(N.S.) 612.

The measure of damages is prima facie the amount of the collection and interest, the burden being on the defendant to mitigate damages. Commercial Bank v. Red River Nat. Bank, 8 N. D. 382, 79 N. W. 859.

That the evidence introduced is wholly sufficient to sustain all findings of fact and conclusions of law made by the district court.

CHRISTIANSON, Ch. J.   The controversy before us involves the liability of the defendant bank upon a certain check which it received from the plaintiff for collection.   The material facts are substantially as follows:

In June, 1918, the plaintiff was the state's attorney of Rolette county in this state.  · Prior to June 10, 1918, one I. M. Ingebretson was the treasurer of said county.   Ingebretson had issued certain fraudulent tax receipts and by means thereof collected moneys from taxpayers of that county.   The fraudulent practices were discovered, and on June 7, 1918, or thereabouts, Mr. Ingebretson executed and delivered to the plaintiff a check in the sum of $1,388.60, drawn upon the Rolette County Bank of St. John, North Dakota, the proceeds of which were to be used by the said Verret in reimbursing the persons so defrauded.   The plaintiff testified that at the time Ingebretson gave him the check he asked him (Verret) "to take that check to the State Bank of Rolla, and not the other bank, and deposit it."   On June 10, 1918, the plaintiff Verret took the check to the defendant bank and, after indorsing it, delivered it to that bank for deposit and collection.   He received from the cashier of the bank a duplicate deposit slip of the usual form.   Verret testified that he informed the cashier of the defendant bank of the purpose for which the check had been given, and asked him not to put it in his (Verret's) general account, but "to put it in a deposit by itself."   It was stipulated as a fact that the defendant bank on the same day forwarded the check to the Capital National Bank of St. Paul for collection and credit; "that the same was received by the Capital National Bank of St. Paul, Minnesota, on June 11, 1918, and on the same day forwarded by the said Capital National Bank to the Federal Reserve Bank of Minneapolis, Minnesota; that said check was received by the Federal Reserve Bank of Minneapolis, Minnesota, on June 11, 1918, and that on the same day, said Federal Reserve Bank of Minneapolis, Minnesota, forwarded same by mail direct to the Rolette County Bank of St. John, North Dakota, the drawee bank therein; that thereafter and on the 20th day of July, A. D. 1918, not having collected said check from

the Rolette County Bank, on which the same was drawn, the said Federal Reserve Bank charged back to the Capital National Bank of St. Paul, Minnesota, the said check, and so advised the Capital National Bank thereof; that on July 22, 1918, the said Capital National Bank of St. Paul, Minnesota, charged back to the State Bank of Rolla, North Dakota, the said check, and so advised said defendant bank of the same; that on the 21st day of July A. D. 1918, a representative of the Federal Reserve Bank of Minneapolis, Minnesota, appeared personally at the Rolette County Bank of St. John, North Dakota, and demanded from the officers of said Rolette County Bank all cash letters of the Federal Reserve Bank of Minneapolis, Minnesota, that were then unanswered, and, among such papers, received the check sued upon in this action; that on July 22, 1918, said representative did duly present the said check for payment to the said Rolette County Bank of St. John, North Dakota, and payment thereof was refused; that on July 26, 1918, the said check was duly returned by the Federal Reserve Bank of Minneapolis, Minnesota, to the Capital National Bank of St. Paul, Minnesota; and that same was immediately forwarded by said Capital National Bank of St. Paul, Minnesota, to the State Bank of Rolla, North Dakota; that on the 30th day of July, 1918, said State Bank of Rolla, North Dakota, notified plaintiff that the said check had not been paid by the Rolette County Bank of St. John, North Dakota, and that same had been on the 30th day of July, A. D. 1918, charged back to plaintiff by defendant." It was further stipulated as a fact, "that the plaintiff in this action was notified verbally by the defendant bank on the 24th day of July, 1918, that the check sued upon in this action had been presented to the Rolette County Bank and payment refused." It was further stipulated "that on the 22d day of July, 1918, the Rolette County Bank was closed by the State Banking Department because of its insolvency, and thereafter a receiver was appointed for said banking corporation by the district court of Rolette county, North Dakota."

The evidence shows that the defendant bank, in the usual course of business, received from the Capital National Bank of St. Paul a card acknowledging the receipt by said latter bank of the check for collection. Plaintiff Verret testified: "On two different occasions between the 10th day of June and the 22d day of July, 1918, I inquired

from the officers of the State Bank of Rolla whether or not this check in controversy had been paid and accepted, and whether or not I could draw and issue checks upon the deposit that I made in that bank and sued upon in this case; that on those two occasions I was informed by the persons in charge of the business of the defendant that I could draw checks on that deposit, and that they would be honored by the State Bank of Rolla, that so far as they knew the check had been paid by the Rolette County Bank on which it had been drawn."

The cashier of the defendant bank testified that he had no recollection of the conversations referred to by the plaintiff. The deposit ledger of the Rolette County Bank at St. John showed that at the time Ingebretson drew his check he, in fact, had no money on deposit at the bank; but that at later dates he made deposits and from and after July 6, 1918, had sufficient money on deposit to care for the check.

The plaintiff Verret testified that he is a banker as well as an attorney, and that he did not expect the defendant bank to present the check to the drawee bank in any other manner than that in which it was done. The testimony, further, is to the effect that the check was forwarded for collection in the usual course, and that ordinarily no further inquiry or tracer would be sent by the forwarding bank.

Manifestly the liability of the defendant, if any, is predicated on negligence,—negligence either on the part of the defendant bank, or on the part of one of its subagents. As pointed out by this court in Farmers State Bank v. Union Nat. Bank, 42 N. D. 449, 173 N. W. 790, there are, in this country, two conflicting doctrines as to the liability of banks which undertake the collection of commercial paper at a distance. One has become known as the "New York rule" and the other as the "Massachusetts rule." Under the so-called New York rule, the first bank is responsible for the conduct of its correspondents and subagents as fully as though it had performed the entire service itself. According to the Massachusetts rule the bank which receives for collection out-of-town commercial paper is responsible only for its own negligence, and not for the negligence of its correspondents or subagents. This court has not, as yet, been required to determine which rule ought to be adopted in this state. Nor do we believe it is necessary to determine that question in this case. Negligence forms the basis of liability under both rules. There

is no liability under either rule, unless there is some negligent act on the part of either the first bank, or one of its subagents, resulting in loss to someone. We do not believe that the facts in this case establish negligence, either on the part of the first bank or on the part of any of its correspondents. The only charge of negligence which plaintiff makes against the defendant bank itself is that its employees told him on two occasions between June 10th and July 22d that, so far as they knew, the check was paid, and that the bank would honor checks drawn by the plaintiff against such special account. The plaintiff did not attempt to designate the dates of the two conversations with any greater particularity than already indicated. Nor did the plaintiff claim that the officers of the bank in such conversations said that the check had been paid, but merely that they said that, so far as they knew, it had been paid. In other words, that they had received no notice that it had been dishonored. This was apparently the sense in which plaintiff understood it, for he went back a second time and made the same inquiry and received the same information. And, apparently, he was not misled by either statement; for while he says he was advised the bank would honor checks drawn against the special account, he refrained from drawing a single check, or in any manner attempting to distribute the funds represented by the check.

The cashier testified that this check was received the same as any other check, and that plaintiff was immediately given credit therefor on the bank books. He further testified: "I may say in explanation, had this check been brought in by a stranger or someone we didn't know he wouldn't have received credit until we found out that the check was o. k., but in case of a responsible depositor we give credit right away, with the understanding, as our pass books read, if checks are not collected they will be charged against the account." It should be borne in mind that at the time plaintiff deposited the check he talked with the cashier. Whatever specific information the bank was given regarding the check was given to the cashier. There is no showing that any other officer was present, or that plaintiff ever informed any other officer as to the purpose of the check. Plaintiff does not say that the two subsequent conversations were with the cashier, but merely with "officers" of the bank. The cashier testified that he had no recollection

46 N. D.—15.

of having had such conversations with the plaintiff. Hence, it is at least as likely, if not more likely, that such conversations were had with other officers of the bank, whose information as to the transaction was limited to what was disclosed by the entries in the bank books.

Plaintiff testified that at the time he deposited the check he informed the cashier: "That *I did not want to draw on this deposit until I knew that the check had been paid.*"

On cross-examination, the following question was propounded to the plaintiff, and the following answer given by him:

Q. Did you at that time (when the check was deposited) tell Mr. Butterwick (the cashier) that *you wouldn't draw upon this deposit in the State Bank of Rolla until you found out that the check was collected,* or words to that effect?

A. *To the best of my recollection I did say that or words to that effect,* and that is the reason I put it in a special deposit and didn't put it with my other deposit. . . . *As a matter of fact I didn't know whether that check was any good or not.*

The plaintiff, Verret (who acted as his own attorney on the trial of the case); propounded the following question to Butterwick, the cashier of the defendant bank:

"Q. Do you remember that I told you in that conversation when I left the check with you, that I was anxious to find out as soon as the check was paid so that I could make out checks and pay off the taxpayers the money they had coming, and that *I wouldn't draw on that deposit until I found it was paid?*"

According to plaintiff's testimony he was never advised that the check was paid. He did not so construe the statements made to him by the officers of the bank. He was twice given the same information. The information received the first time was of such nature that he did not feel warranted in drawing checks. The second time he received precisely the same answer that he received the first time. There is no contention that the answers were untrue. There is no foundation in the evidence for any claim that the defendant bank itself owed any duty to make any inquiry regarding, or effort to collect, the check other than was done. We find no evidence of actionable negligence on the part of the bank itself.

Nor do we find any evidence tending to establish actionable negligence on the part of any of the bank's subagents. And on oral argument it was virtually admitted that such negligence had not been shown. It will be noted that the facts stipulated clearly establish that all subagents acted with the greatest possible despatch in forwarding the check. The only subagent to whom negligence could possibly be charged is the Federal Reserve Bank. That bank forwarded the check promptly to the drawee bank (which was the only bank in St. John). Having received no answers to its forwarding letters, it sent a personal representative to the drawee bank on July 21st. There is no contention that such personal representative should have been sent before, or that the Federal Reserve Bank failed to perform any other duty resting upon it.

It follows, from what has been said, that the judgment appealed from must be reversed. It is so ordered.

BRONSON, ROBINSON, and BIRDZELL, JJ., concur.

GRACE, J. (dissenting). I am of the opinion that the judgment appealed from should be affirmed. The Federal Reserve Bank of Minneapolis, Minnesota, was a subagent of the defendant, and was, without question, guilty of negligence.

On June 11, 1918, it forwarded the check in question to the Rolette County Bank, the drawee, of St. John, North Dakota, and not receiving payment, on the 20th day of July, 1918, charged the check to the Capital National Bank of St. Paul, from which it had received it. Otherwise, the Federal Reserve Bank paid no attention to the check until the 21st day of July, 1918, when its representative appeared personally at the Rolette County Bank of St. John and received the check; and on the 22d of July, 1918, presented it for payment to the Rolette County Bank, and payment was refused.

On the 26th day of July, 1918, it returned the check to the Capital National Bank, from which it had received it. It is clear that after the check was sent by the Federal Reserve Bank to the Rolette County Bank, the drawee, and while the check was with the drawee, it had sufficient money on deposit to the credit of Ingebretson, from July 6th to July 21, 1918, to have paid it.

We think it is clear that the Federal Reserve Bank was negligent in the matter of the collection of the check. If it had promptly insisted on the payment or return of the check, and neither was forthcoming, it was then its duty to forthwith notify the Capital National Bank of St. Paul, and its duty would have been, in turn, to as promptly notify the defendant, and the duty of the latter would have been to give notice promptly to the depositor, who could have then taken steps to collect the check, there being money in the bank upon which it was drawn to have paid the check, any time after July 6th to July 21st, as above stated, all of which time the check was lying dormant in drawee bank, and this by reason of the negligence of the Federal Reserve Bank.

When a bank undertakes to act as principal, it should be held to the same rule of conduct that applies to the liability of principals, generally; that is, it should be responsible, in damages, for the negligent acts of its agents or subagents, performed within the scope of their employment. If such rule were applied in this case, as the record now stands, the defendant could not escape liability.

PER CURIAM. Plaintiff has petitioned for a rehearing. The petition is in effect a reargument of the case. It assails both the conclusions of fact and of law reached by us in this case. We have given the petition careful consideration. We have again reviewed the evidence, and reconsidered the legal principles involved. We find no reason to doubt the correctness of the former decision in any particular. That decision was handed down after careful consideration of every aspect of the case, and represented the deliberate views of the four members of the court who signed it. Further reflection has not altered, but rather confirmed, the views we then expressed.

Rehearing denied.

CHRISTIANSON, Ch. J., and ROBINSON, BRONSON, and BIRDZELL, JJ., concur.