FIRST NATIONAL BANK OF SHREVEPORT V. CITY NATIONAL BANK.

No. 2319.   Decided May 6, 1914.

**1.—Bank—Collections—Negligence.**

A bank which, receiving drafts for collection, forwarded them to the bank on which they were drawn for payment and remittance, was guilty of negligence in failing for a month thereafter to take any steps to obtain the remittance or learn why it was not made, the drawee having marked them paid on receiving them, but not remitting the amount, and having failed at the end of that time.   (P. 303.)

**2.—Bank—Agency—Collection of Negotiable Paper.**

The authorities differ as to whether a bank receiving negotiable paper for collection and forwarding same to another bank for that purpose is responsible for the latter's negligence in its collection.   But it is not so responsible where the established custom was to forward such paper to other banks for collection, and it received the collection giving distinct notice that it would be responsible only for diligence in selecting an agent, and not for the negligence of the agent bank so selected.   (Pp. 303, 305.)

**3.—Bank—Collection Through Agent.**

A bank receiving drafts for collection and forwarding them to another bank to be, in accordance with the custom of such banks, entered to its credit and collected, with instructions to protest if not paid, had the right, in the absence of notice of their dishonor, to assume that they had been paid; and it was not negligent in failing to take further steps to ascertain or enforce their collection.   (P. 305.)

**4.—Same.**

A bank receiving for collection a draft on the only bank in another town was not negligent in sending same to the drawee itself for payment and remittance or protest, such drawee bank being then in good standing, and the custom of banks in the State being to send the draft in such cases directly to the drawee, and for the latter to have them protested if it did not pay.   (P. 305.)

Questions certified from the Court of Civil Appeals, First District, in an appeal from Galveston County.

*P. A. Drouilhet,* for appellant.—It is negligence to send paper for collection to the bank on which it is drawn for payment.   First Natl. Bank of Corsicana v. City Natl. Bank of Dallas, 12 Texas Civ. App., 318; Gulf, C. & S. F. Ry. Co. v. North Texas Grain Co., 32 Texas Civ. App., 93; Bank of Rocky Mount v. Ford, 55 S. E., 95; German Natl. Bank v. Burns, 12 Colo., 539; First Natl. Bank v. Citizens Savings Bank, 123 Mich., 336; Carson, Pirie, Scott & Co. v. Fincher, 129 Mich., 687; Amer. Exch. Nat. Bank v. Metropolitan Nat. Bank, 71 Mo. App., 451; Minneapolis Sash & Door Co. v. Metropolitan Bank, 76 Minn., 136; Farley Nat. Bank v. Pollock, 39 So., 612; 3 Am. & Eng. Ency. of Law, "Banks and Banking," p. 809, and cases cited.

If the failure to protest a check is the consequence of the negligence or default of the bank which should have had it protested, or of its agent, the bank is liable for the loss resulting.   It is negligence to put a check out of the power of being protested, and the bank thus guilty is liable for the loss resulting.   Same authorities.

Evidence of a usage or custom among banks to send paper for collection to the bank on which it is drawn for payment is not admissible to justify such an act, as it is in contravention of established law, and is unreasonable and void. Lockhart v. Dewees, 1 Texas, 537; Stillman v. Hurd, 10 Texas, 112; Farley Nat. Bank v. Pollock & Bernheimer, 145 Ala., 321; 29 Am. & Eng. Ency. of Law, "Usages and Customs," p. 418.

When a bank accepts paper for collection and gives credit therefor on receipt, subject to final payment, and carries that credit an unreasonable length of time before giving notice of non-payment, it will be precluded from cancelling the credit. Diamond Mills Co. v. Groesbeck Natl. Bank, 9 Texas Civ. App., 31; Hoefling v. Dobbin, 91 Texas, 214; Smithwick v. Andrews, 24 Texas, 488; Trinidad First Natl. Bank v. Denver First Natl. Bank, 4 Dill (U. S.), 290; Second Natl. Bank v. Merchants Natl. Bank, 55 L. R. A., p. 273, and cases cited; 3 Am. & Eng. Ency. of Law (2nd ed.), 805-806.

Appellee City National Bank is liable to appellant for the default of the Stockyards National Bank, its agent. Schumacher v. Trent, 18 Texas Civ. App., 17; State Natl. Bank of Fort Worth v. Thomas Mfg. Co., 17 Texas Civ. App., 214; Bank v. Bank, 112 U. S., 276; 3 Am. & Eng. Ency. of Law (2nd ed.), "Banks and Banking," pp. 805-811; Hoefling v. Dobbins, 91 Texas, 214; Smithwick v. Andrews, 24 Texas, 488.

Appellee's instructions being to collect the checks and credit appellant's account with the proceeds thereof, it violated its instructions by sending the checks to the Stockyards National Bank with instructions to collect and credit returns to its account and by accepting said credit, and *eo instante* became liable to appellant as for so much money collected. Briggs v. Central National Bank, 89 N. Y., 182; Opie v. Serrill, 6 W. and S. (Pa.), 264; Walker v. Smith, 1 Wash. (U. S.), 152; Bank of Montreal v. Ingerson, 75 N. W., 353; Natl. Bank of Commerce v. Am. Exch. Bank (Mo.), 52 S. W., 265; 1 Am. & Eng. Ency. of Law (2nd ed.), "Agency," p. 1060; Zane on Banking, secs, 176-178.

It is the duty of a bank accepting paper for collection to use due diligence in getting returns and to immediately institute inquiries when returns are not made within a reasonable time. Second Natl. Bank v. Merchants Natl. Bank, 55 L. R. A., 273; Trinidad First Natl. Bank v. Denver Natl. Bank, 4 Dill (U. S.), 290.

*Stewarts, Geo. T. Burgess,* and *J. E. Quaid,* for appellee City National Bank.—The court did not err in admitting the evidence to establish custom amongst banks and bankers, fixing the liability of a bank with reference to collection of commercial paper. Schumacher v. Trent, 18 Texas Civ. App., 17; Exchange Natl. Bank v. Third Natl. Bank, 112 U. S., 276.

No duty devolved upon appellee under its contract with appellant to make prompt presentment and collection of the items in controversy and to give notice of the non-payment thereof, appellee's contract only

obligating it to use due diligence in the selection of a bank or agent to which to send the paper for collection, and appellee having selected a proper agent, and having sent the items to such agent promptly, its duties in connection with the paper were performed, and appellee was by the contract expressly relieved from liability for failure or negligence of any agent appointed by it. Givan v. Bank, 47 L. R. A., 270; Exchange Natl. Bank v. Third Natl. Bank, 112 U. S., 276; Schumacher v. Trent, 18 Texas Civ. App., 17; Wilson v. Bank, 52 L. R. A., 632.

Appellee by its contract having agreed to give appellant credit for all items upon receipt, subject to final payment, and having in all other respects performed its contract with appellant in reference to the handling of paper, was by its contract entitled to cancel the credit theretofore given after being notified of the non-payment of the items. Wilson v. Bank, 52 L. R. A., 632.

Appellee's liability to appellant was fixed by a contract between the parties which prescribed the duty and liabilities of appellee. The undisputed evidence showed that appellee had fully performed each and every provision of its contract. The charge requested absolutely ignores the contract between the parties, was not applicable to the facts, and was properly refused. Givan v. Bank, 47 L. R. A., 270.

The Stockyards National Bank was not the agent of appellee and appellee is not liable for the default of the Stockyards National Bank because the contract between appellant and appellee expressly exempted appllee from any liability of any bank to which it might send any items received by it from appellant. Givan v. Bank, 47 L. R. A., 270; Waterloo Milling Co. v. Kuenster, 29 L. R. A., 794; Beach v. Moser, 46 Pac., 202.

The Stockyards National Bank was not guilty of negligence because, by the custom in force amongst banks and bankers, it was proper for the Stockyards National Bank to send the items to the Bank of Edgewood to collect or protest if not paid. Kershaw v. Ladd, 56 Pac., 402.

Under the custom of the banking business which was a general and well established one it would have been proper for appellee, and it was proper for the Stockyards National Bank to send the items in controversy to the Bank of Edgewood, and such custom making it proper to so send the items, appellee would not be liable for the default of the Bank of Edgewood. Wilson v. Bank, 52 L. R. A., 632; Kershaw v. Ladd, 56 Pac., 402.

Mr. Justice PHILLIPS delivered the opinion of the court.

The certificate of the Honorable Court of Civil Appeals for the First District and the questions thereunder propounded are as follows:

"In this case the First National Bank of Shreveport (which will be hereafter designated as the Shreveport bank) sued the City National Bank located at Galveston (which will be designated as the Galveston bank) to recover the amount of three several drafts, aggregating $326.32, less a credit of $135.52, on the Edgewood National Bank, which were sent by the Shreveport bank to the Galveston bank for collection. The

suit was instituted in the Justice Court. The Galveston bank brought in the Stockyards National Bank of Fort Worth (hereafter designated the Fort Worth bank), to which it had sent the drafts for collection, and by which they had been sent to the Edgewood bank, and prayed for judgment over against said bank in case of a recovery against it. A trial in the Justice Court resulted in a judgment against the Galveston bank in favor of plaintiff, and in favor of the Galveston bank against the Fort Worth bank. An appeal to the County Court resulted in a judgment in favor of the Galveston bank and the Fort Worth bank, upon a peremptory instruction to the jury. The Fort Worth bank filed its plea of privilege to be sued in Tarrant County, which was taken under advisement by the County Court but was not ruled upon, the court rendering judgment in favor of that bank as to the demand of the Galveston bank against it, upon the rendition of the judgment in favor of the Galveston bank as against the claim of the Shreveport bank. From the judgment the Shreveport bank prosecutes this appeal.

"Appellant having made no claim against the Fort Worth bank, and consequently not being entitled to any relief against it, on its pleadings, can not complain of the judgment in favor of that bank against the claim of the Galveston bank. The case as presented is limited to the judgment in favor of the Galveston bank as to the claim of the Shreveport bank against it.

"It is stated in appellant's brief, and the evidence shows such to be the fact, that the only disputed facts are as to the sending and receipt of two certain letters, one on January 20 or 21, 1909, and the other on October 30, 1908, both of which, it is claimed by appellee were written and sent by it to the Shreveport bank on the dates named, but which appellant claims never to have received, and evidence in support of such contentions was introduced by the parties respectively. Omitting the facts with regard to the sending and receipt of these two letters, which we do not deem material, the undisputed evidence discloses the following facts:

"About May 27, 1908, the Shreveport bank entered into an agreement with the Galveston bank by the terms of which the former was to keep with the latter, on deposit, not less than $50,000, upon which the latter bank was to pay two per cent interest. The Galveston bank was to collect all of the Texas business of the Shreveport bank at par, by which we understand, without expenses to the Shreveport bank. In pursuance of this arrangement appellant sent to appellee daily its Texas collections, aggregating several thousand dollars in amount, and many different items each day. Each day the receipt of these items was acknowledged by appellee on postal cards, using a printed form containing the following statement: 'Due diligence will be observed in the selection of banks or agents for the collection of all paper out of the city, but this bank will not be responsible for the failure or negligence of such bank or agent.' There is no question that this statement was observed by appellant. About the time a similar arrangement was entered into between appellee and the Fort Worth bank under which

appellee was to keep a certain amount on deposit with the Fort Worth bank, which was to pay interest on the same, and in consideration thereof to do a similar collecting business for appellee, as to a part of its business in certain territory, free of charge. Under this arrangement it was customary, which custom was general and well understood among bankers, including appellant, to enter a credit of items received from the sending bank, with the understanding that such credits should be canceled if the item was not paid.

"On December 2 and 3, appellant sent to appellee for collection the three small drafts referred to, drawn on the Edgewood National Bank, located at the town of Edgewood, in Van Zandt County, Texas. These items were received by appellee and at once entered to the credit of appellant and promptly transmitted by appellee to its correspondent, the Fort Worth bank. Appellee was instructed to protest these drafts · if not paid, and these instructions it transmitted to its correspondent, the Fort Worth bank. Under the arrangement between these banks referred to it was not expected by appellant that the cash should be remitted to it, when collected, nor by appellee that such should be done by its correspondent at Fort Worth. These drafts reached the Fort Worth bank on the 5th of December, and were at once transmitted to the Edgewood National Bank, the drawee, for collection and returns, with instructions to protest if not paid, and reached the Edgewood bank on December 7th, when they were marked 'Paid,' but no returns were made to the Fort Worth bank, nor, so far as we can find from the evidence, was there any inquiry made by the Fort Worth bank of the Edgewood bank prior to its failure. In addition to the particular instructions with regard to these drafts, the Edgewood bank had been previously instructed by the Fort Worth bank to collect and remit promptly all money collected for it. The Edgewood bank failed and closed its doors on January 13, 1909. Its business was wound up by receivers, and a dividend of $135.52 was sent to the Fort Worth bank, which was transmitted to appellee and by appellee to appellant.

"Up to the day of its failure the Edgewood bank was in good credit and standing and was regarded by banks and bankers and business men generally as a solvent and reliable bank. It was the only bank in the · town of Edgewood. There were several reliable banks in towns nearer Edgewood than Fort Worth, one within seven miles, and others at varying distances. Edgewood is nearer Shreveport than Galveston and there is direct communication between the towns by railroad.

"Immediately upon receiving notice of the failure of the Edgewood bank the Fort Worth bank, on the 18th or 19th of January, notified appellee. Appellee claims to have at once, on the 19th or 20th of January, written and mailed a letter to appellant notifying it of the failure, and introduced evidence of this fact, but appellant denied it had received this letter and supported the denial by testimony. It is, however, undisputed that on February 27th appellant received such notice from appellee. It is stated in appellant's brief that 'in view of

the admitted fact that the Bank of Edgewood failed January 13th, this difference is not material.'

"On receipt of the drafts by the Fort Worth bank it entered the amounts to the credit of the Galveston bank, which credit was canceled upon failure of the Edgewood bank. The credit to appellant by appellee was carried on its books until some time in March, 1909, but in the letter of February 27th appellee stated that the drafts not having been paid, the credits would be canceled. In this letter of February 27th appellee called attention to a letter of January written by it to appellant notifying the latter of the non-payment, but in the reply of appellant to this letter it stated that its records did not show this letter of January.

"The undisputed evidence, coming from various bank officials, including the cashier of appellant, shows that at and prior to the transactions in controversy, there was a general custom and understanding among bankers in Texas, and elsewhere, that when one bank sent to another bank items to be collected out of the town, or city of the receiving bank, such bank was not expected to collect such items itself, but through other agencies to be selected by it. It was further shown to be the general and recognized custom, when the bank upon which such collections were drawn was the only bank in the town, and was in good credit and standing, to send the collections direct to such drawee bank. This was the custom, notwithstanding the drafts or checks were to be protested upon non-payment, and in such case it was customary for the drawee bank to protest, if not paid, and this was generally done. The Edgewood bank was the only bank in the town. Express companies would not take collections subject to protest, and it was the general custom for banks and bankers to collect only through other banks. It was also the general custom for banks upon receipt of checks or drafts which, under this general custom, were to be forwarded for collection through other banks, to credit the same to the sender upon receipt, subject to final payment.

"The business between appellant and appellee was handled in this way and appellant's cashier testified to these various customs as general, and as controlling the business of banks with each other, and that in sending the drafts in question it expected that appellee would handle this business in the usual and customary way, and not otherwise. After transmitting these drafts to its correspondent appellee made no further inquiry as to their collection until after the failure of the Edgewood bank. The Stockyards National Bank was and is a solvent and reliable bank, in good credit and standing, and in every way responsible.

"The question presented is one of great importance to the banking interest, which we think should be definitely settled by the Supreme Court. The authorities are in some confusion. Our jurisdiction in this case is final. For these reasons we deem it proper to certify to your honorable court the following questions:

"First. Was the Stockyards National Bank, correspondent of the City National Bank, negligent in its dealings with these drafts?

"Second.   Was the City National Bank liable to the Shreveport bank for the negligence, if any, of its correspondent, the Stockyards National Bank?

"Third.   Was the City National Bank negligent itself in failing to make inquiry of its correspondent as to the collection of the drafts, or in sending these drafts for collection to the Stockyards National Bank, with the knowledge that the latter bank would send them to the drawee bank?"

In response to the first question we think it is manifest, under the statement of the case made by the Court of Civil Appeals, that the Stockyards National Bank was negligent in failing to make inquiry of the Edgewood National Bank in regard to the collections or a reasonable effort to obtain from that bank the remittance for them.   The checks were not sent by it to the Edgewood National Bank for credit to its account upon collection, but for collection and returns and under further established instructions to promptly remit direct to it for all collections.   It received the items from the appellee on December 5th, and immediately forwarded them to the Edgewood bank, by which they were received and paid on December 7th.   The Edgewood bank did not fail until January 13th, more than a month following, during which time it apparently continued to transact its business in regular course. The checks not having been protested or returned, the Stockyards National Bank was necessarily aware, within a few days after it had forwarded them, that the Edgewood bank had not complied with its instructions to make remittance; and under the circumstances due care would have prompted some effort to learn the cause and obtain the returns.   According to the foregoing statement, however, it did nothing in the matter beyond forwarding the checks to the Edgewood bank, apparently withdrawing its care from the transaction at that initial stage of its own relation, which, of course, was negligent conduct.   We do not think that under the circumstances stated it should be held guilty of negligence as a matter of law in sending the checks for collection to the bank upon which they were drawn, for reasons to be stated under the third question.

There is a marked diversity of view in the authorities upon the question whether a correspondent bank, to which another bank receiving from an owner negotiable paper for collection transmits it for collection, is the agent of the owner or the forwarding bank, and whether the latter may be held for its negligence in such transactions.   It has not been decided by this court, though reference was made to it and the state of the authorities upon it in City Bank of Sherman v. Weiss, 67 Texas, 331, 3 S. W., 299.   That, in the absence of a special contract or established and understood usage to the contrary, the correspondent bank is the agent of the forwarding bank and not of the owner or holder of the paper delivering it to the forwarding bank, is the general rule adhered to by many courts of eminence in this country, among them the Supreme Court of the United States.   The contrary holding has been as strongly

announced and as firmly maintained by other courts of distinction, and has upon its side the weight of Chief Justice Marshall's opinion in Bank of Washington v. Triplett, 1 Peters, 25, 7 L. Ed., 37, and Chancellor Walworth's notable dissenting opinion in Allen v. Merchants Bank, 22 Wend., 215, 34 Am. Dec., 289. An extended discussion of the question, with the authorities supporting each view, may be found in Morse on Banks and Banking, secs. 268-287, that author giving his approval to the negative position.

But this case does not present the question in its broad and general nature. It arises here under conditions which would necessarily qualify the operation of even the rule affirmed by those courts that hold the correspondent bank to be the agent of the forwarding bank and the latter liable for its neglect. There is probably no stronger authority in favor of that rule than Exchange National Bank v. Third National Bank, 112 U. S., 276, 5 Sup. Ct., 141, 28 L. Ed., 722. Yet in that case it is said:

"And, while the rule of law is thus general, the liability of the bank may be varied by consent, or the bank may refuse to undertake the collection. It may agree to receive the paper only for transmission to its correspondent, and thus make a different contract, and become responsible only for good faith and due discretion in the choice of an agent." And in Morse on Banks and Banking it is stated, section 269: "If there is an express contract upon the matter of the first bank's responsibility, of course the question will be governed by it." And in section 270: "Usage may determine the question. If the law has not already been settled by judicial determination, so as to exclude any subsequent evidence of usage to subvert it, the bank may absolve itself from liability for the acts of agents other than itself, or the customer may fix such liability upon the bank by showing, respectively, that such is the established usage and understood custom in the place where the bank, the extent of whose duty and liability is in question, is situated."

Here it was shown, not only that there prevailed in Texas and elsewhere a general and well understood custom for banks receiving collections upon other points not to effect the collection themselves but through the agency of other banks selected by them, a custom known to appellant at the time and expected by it to be pursued in this transaction, but that these particular checks were entrusted by it to the appellee for collection with distinct notice, previously given it by the latter and reiterated in this instance, "that it would observe due diligence in the selection of banks or agents for the collection of all paper out of the city, but would not be responsible for the failure or negligence of such bank or agents." The appellee would have had the undoubted right to decline to handle the paper except upon such understanding of its duty and liability. It was as clearly entitled to attach such condition to its undertaking, and no sound reason can be urged why it should be denied effect as to a party who understood it and so acted as to create assent to and acceptance of it. By forwarding the paper to the appellee with knowledge of this distinct limitation of its liability,

the appellant expressed its agreement to the terms of the limitation. It is therefore in the position of having in advance agreed to the exemption of appellee from liability for any negligence of its correspondents in the course of the collection, and accordingly can not recover of it on account of such negligence.

The second question is answered in the negative.

Replying to the third question we do not think under the circumstances appellee should be held guilty of negligence for merely failing to make inquiry of its correspondent in respect to the collection or. in sending the checks to it with knowledge that it would send them to the bank upon which they were drawn. The checks were sent by it to its correspondent at Fort Worth, not for returns, but for credit, and they were credited to its account by the latter bank immediately on receipt. They were sent with instructions to protest in the event of non-payment, a regular method of affording notice in case of dishonor for any cause. It does not appear that appellee had any notice that the collection had failed prior to the closing of the Edgewood bank. Under such circumstances we think appellee had the right to assume that the checks had been paid, and to act accordingly.

The Stockyards National Bank, appellee's correspondent at Fort Worth, was a reliable bank in good standing; and there was no negligence in merely sending the checks to it. The Edgewood bank, the drawee in the checks, was the only bank at Edgewood, and was in good standing up to the time of its failure. The checks were to be protested at Edgewood if not paid. The express company there, apparently the only other public agency for making the collection, would not handle protest paper at all. The established custom, under this somewhat extreme condition, was to send the checks to the drawee bank if it was in good standing, and the instructions to protest were generally observed by such banks. Appellant was aware of this general custom and did not expect this business to be handled differently. Except by the adoption of an extraordinary method, which was not incumbent upon it, it seems to us that in making the collection the Fort Worth bank had no other alternative but to send the checks to the drawee bank; and as that bank was in good standing at the time it should not be deemed guilty of negligence on that account. Wilson v. Bank, 187 Ill., 222, 58.N. E., 250, 52 L. R. A., 632. It follows that appellee was not negligent in forwarding the checks to its correspondent with knowledge that it would in turn forward them to the bank upon which they were drawn. The third question is, therefore, answered in the negative.