## RODGERS et al. v. FARMERS' BANK OF NOLANVILLE et al. (No. 6769.)

(Court of Civil Appeals of Texas. Austin. June 5, 1924. Rehearing Denied July 5, 1924.)

**1. Banks and banking ⬅171(2) — Bank to which check forwarded by drawee held mere agent for collection.**

Correspondent bank to which payee bank forwarded check, with which drawee bank had a deposit, held mere agent for collection.

**2. Banks and banking ⬅171(2) — Bank as agent for collection is liable only for loss resulting from negligence in the manner of its handling.**

Bank handling check as agent for collection is liable only for loss resulting from negligence in the manner of its handling.

**3. Banks and banking ⬅171(1)—Check held not paid, though charged by correspondent bank against account of drawee.**

Check forwarded by payee bank to correspondent bank, with which drawee had funds deposited though in amount insufficient to pay check, and by that bank charged to the drawee's account and forwarded to it for payment, and by drawee stamped "paid," but subsequently returned dishonored, held not paid so as to entitle payee to funds of drawee in hands of correspondent bank.

**4. Banks and banking ⬅171(1)—Check held not "paid" within meaning of Uniform Negotiable Instruments Act, though not returned by drawee within 24 hours after receipt.**

Check charged by correspondent bank, acting merely as agent, for collection against account of drawee, and forwarded to drawee for payment, and subsequently returned dishonored, held not "paid" within Uniform Negotiable Instruments Act, §§ 88, 89, 119, 137, 185 and 191 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—88, 6001—89, 6001—119, 6001—137, 6001—185, 6001—191), though not returned by drawee bank until more than 24 hours after its receipt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Payment.]

**5. Banks and banking ⬅78—Assignment by bank, held to include all of deposit in another bank, notwithstanding outstanding checks against such deposit.**

Assignment for benefit of creditors by banking partners of all credits, indebtedness, and claims against other banks in favor of the assignors, held to include all of deposit in another bank, notwithstanding checks against such deposit not yet presented.

**6. Assignments ⬅49—Issuance of check not assignment of fund on which drawn.**

Issuance of checks against particular deposit held not to amount in law to assignment of that deposit or portion thereof.

### On Motion for Rehearing.

**7. Appeal and error ⬅747(2) — Failure of successful party below to make formal cross-assignment of error does not preclude appellate court from looking beyond findings of trial court in making proper disposition.**

Notwithstanding the general rule that cross-assignments of error will not be considered on appeal, when not filed in trial court, failure of a successful party in the trial court to follow up exception to adverse finding of fact and conclusion of law with formal cross-assignment of error does not preclude appellate court from looking beyond findings of fact in determining proper disposition to be made of case.

**8. Appeal and error ⬅1177(8) — Appellate court has power to set aside findings and conclusions of trial court in toto, where error in part.**

In interest of reaching proper disposition of case, appellate court, after setting aside findings and conclusions of trial court in part, has power to set them aside in toto.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by Mrs. A. J. Rodgers and others against the Farmers' Bank of Nolanville and others. From judgment rendered, Mrs. A. J. Rodgers and others appeal. Reversed in part, and cause remanded for new trial, and in part affirmed.

Jas. B. Hubbard, of Belton, P. H. Dougherty, of Temple, and Jones, Roberts & Monteith, of Houston, for appellants.

J. B. Talley, of Temple, for appellees.

McCLENDON, C. J. This case arose out of the following facts:

On October 7, 1920, Will Rancier and E. Layne, as partners, were conducting a private banking business at Nolanville, Bell county, Tex., under the name of Farmers' Bank, which institution will be referred to as the Nolanville bank. Among the depositors in the bank were Mrs. A. J. Rodgers and a number of others, who will be referred to as plaintiffs, the aggregate amount of whose deposits was $2,274.76; F. E. Box, whose deposit was $4,645.23; and L. M. Partain,

whose deposit was $519.20. On that date Box drew a check on the Nolanville Bank for $4,000, in favor of First National Bank of Lometa, which will be referred to as the Lometa bank, and deposited the check with the Lometa bank for collection. The latter sent the check to the First National Bank of Temple, which will be referred to as the Temple bank. The check reached that bank on October 8th, and on the same date the Temple bank charged the amount of the check to the Nolanville bank, and credited the amount to the Lometa bank, and sent the check direct to the Nolanville bank for payment, it arriving there in the evening after banking hours of October 8th. The Temple bank, in acknowledging to the Lometa bank receipt of the check and credit of the amount, stipulated as follows:

· "All items received by this bank for credit or collection are taken upon express condition that this bank is not to be held liable for the acts of omissions of any other banks. or collectors to whom the items may thereafter be transmitted or for loss in transmission, either of items or documents attached thereto or accompanying the same, or of the proceeds of the items; the liability of this bank being hereby limited to its own acts.

"Should the collecting parties, or any intermediary agency, convert or anywise lose, destroy, or make wrongful delivery of the items, or documents attached thereto or accompanying same, or the proceeds of the items, or remit in payables which are thereafter dishonored, or should this bank from any cause not actually receive the funds thereon, the amount for which credit has been given will be charged back.

"We will use our discretion as to sending items direct or through intermediary banks for collection acting in each case as agent only, and being under no responsibility to our correspondents for our exercise of such discretion.

"We reserve the right to refuse payment of checks and drafts drawn against the credits advised herein until the final payment of the items and the actual receipt by us of the funds for which credit has been given."

This stipulation was shown to be in accordance with the usual custom of banks in handling such collections. Upon taking the check from the mail, one of the partners in the Nolanville bank stamped it "Paid," and placed it upon the hook or file to be entered on the books of the bank the next day. The bank opened· at 8 o'clock on the morning of the ninth, which was Saturday, and remained opened for one hour, finally closing its doors at 9 o'clock. The check was never entered on the books of the Nolanville bank. About noon, October 9th, the Temple bank learned of the insolvency of the Nolanville bank, and telephoned the Lometa bank, advising that the latter had best regard the Box check as not paid. On Tuesday night, October 12th, the partners of the Nolanville bank, who also had a hardware business at Nolanville, made an assignment of all the assets of the bank, of every character, to Ben S. Layne, as trustee for the benefit of all of the depositors of the bank. This assignment also transferred to Layne as trustee all the assets of the hardware business for the benefit of the creditors of that business; the instrument reciting that the depositors of the bank should be first paid out of the assets of that business and the creditors of the hardware business should be first paid out of the assets of that business, and any balance from either business was to be paid to the creditors of the other business. On October 13th, the trustee Layne redelivered the Box check to the Temple bank, at the same time marking out in pencil the paid stamp. The Temple bank at once charged the amount of the check to the Lometa bank, and credited the amount to the Nolanville bank, transferring the Nolanville bank account to Layne as trustee, and returned the check to the Lometa bank, advising that bank by wire of its action. On October 8th, at the time the Temple bank charged the Nolanville bank with the Box check, the Nolanville bank had to its credit with the Temple bank $3,294.49, and the debit of the Box check therefore created an over draft of $705.51. The Temple bank had, however, charged to the account of the Nolanville bank, on October 6th, $4;201, the amount of a note which the Nolanville bank owed it. The plaintiffs, prior to October 7th, severally drew checks in favor of various banks or other parties, each for the amount of his deposit in the Nolanville bank, and these checks passed through the Federal Reserve Bank at Dallas, and were sent direct by that bank to the Nolanville bank for payment, and the latter issued, on October 7th, its check in favor of the Federal Reserve Bank for the total amount of these checks, $2,274.76. This check was presented by the Federal Reserve Bank to the Temple bank, on October 9th, but payment was refused. In like manner Partain drew a check for the amount of his deposit, sent it through a local bank, which received from the Nolanville bank a check for the amount drawn on the Temple bank. This check was also dishonored by the Temple bank. It appears that Box was at Nolanville on October 9th, and inquired of the Laynes regarding his check, and was told that they thought it would be taken care of. It seems that at the time these conversations took place the Laynes were under the impression that the Temple bank had sufficient funds of the Nolanville bank to pay this check, as well as the checks that had been drawn by the Nolanville bank against that account in favor of the Federal Reserve Bank and Partain, which would have been the case but for the fact that the $4,200 note had been charged by the Temple bank against that account. This fact was not then known· to or was overlooked by the officials of the Nolanville bank. Some time later, Layne as

trustee declared a dividend in favor of the depositors of the Nolanville bank, and dividend check was sent to Box, based upon the full amount of his deposit as shown by the books of the bank, which had never been charged with the $4,000. This check was cashed by Mrs. Box, and Box afterwards offered to return to the trustee the proportionate amount of the check, based upon the amount to the credit of the Nolanville bank with the Temple bank. Later dividends in favor of Box were figured only on the excess of his deposit over and above the amount in the Temple bank to the credit of the Nolanville bank.

On April 13, 1921, plaintiffs brought this suit against the Nolanville bank, as owners and holders of the check issued in favor of the Federal Reserve Bank, and at the same time sued out a writ of garnishment against the Temple bank. Either originally, or in subsequent pleadings, Layne as trustee and Box were made defendants, and it was contended by plaintiffs that Box had ratified the action of the trustee in returning his check to the Temple bank by receiving dividends upon the full amount of his deposit.

Ben S. Layne, as trustee, and E. Layne and Rancier accepted service, but did not otherwise appear in the case. Partain intervened, asserting ownership of the fund held by the Temple bank to the extent of the check which the Nolanville bank had issued covering the amount of his deposit. Box, in his answer, asserted that the Temple bank was his agent for collecting the $4,000 check, and that when the amount of that check was charged to the account of the Nolanville bank and credited to the account of the Lometa bank and the Nolanville bank thereafter marked the check "Paid" and failed to return it to the Temple bank within 24 hours from its receipt, the check was thereby in law paid, and the Temple bank was indebted to him in the amount of the check, or at least to the extent that the Temple bank had funds to the credit of the Nolanville bank. Box further asserted in his answer that, if in fact the check was not paid, then the fund to the credit of the Nolanville bank passed by the assignment of October 12th to Layne as trustee, for the benefit of the depositors of the Nolanville bank; that he Box was a depositor of said bank and interested in funds so assigned, and he prayed in the alternative on behalf of himself and other creditors of the Nolanville bank that the fund in the Temple bank to the credit of the Nolanville bank be awarded to Layne as trustee under this assignment.

In reply to this latter contention, plaintiffs alleged that it was not intended by the Nolanville bank at the time the assignment was made that the credit in the Temple bank should pass by the assignment to the trustee, except as to the excess over and above the checks drawn by the Nolanville bank against the Temple bank in favor of the Federal Reserve Bank and Partain; and that, if the language of the assignment was sufficiently broad to cover the entire credit, it was so drawn by mistake, and they prayed in that event that the instrument be reformed so as to pass to the trustee only the excess held by the Temple bank above the amount of the checks in favor of the Federal Reserve Bank and Partain. Upon the trial it was agreed by all parties concerned that the Temple bank had to the credit of Layne, trustee for the Nolanville bank, the sum of $3,294.39, and that the Temple bank might pay that amount into the registry of the court, or to whomsoever the court might decree it; and upon such payment the Temple bank should be discharged from liability to any of the parties, and should recover its costs, including an attorney's fee of $50.

The cause was tried to the court without a jury, and the court rendered judgment in favor of Box for the amount of the fund in the Temple bank, and denied recovery to plaintiffs and Partain. The court filed findings of fact and conclusions of law, in which it held that under the circumstances above detailed the Box check was paid, and consequently Box was entitled to recover the amount which the Temple bank had at the time to the credit of the Nolanville bank. The court further found and held that it was not the intention of the Nolanville bank to assign to the trustee the amount to its credit in the Temple bank, except that in excess of the checks which it had drawn in favor of the Federal Reserve Bank and Partain, and reformed the instrument of assignment accordingly. From this judgment the plaintiffs alone have appealed, assigning as error the holding of the trial court that the facts constituted a payment of the Box check. Box has cross-assigned as error the finding and holding by the trial court that the instrument of assignment should be reformed so as to exclude therefrom the amount of the checks drawn by the Nolanville bank in favor of the Federal Reserve Bank and Partain. The latter has not appealed.

But two questions are presented for decision: First, whether the evidence will support the finding that the Box check was paid; and if so, second, whether the evidence will support the finding and conclusion of the trial court that the assignment should be reformed.

The theories upon which Box contends that the check was paid are: First, that the action of the Nolanville bank in stamping the check "Paid," coupled with the debit against the Nolanville bank and the credit in favor of the Lometa bank on the books of the Temple bank amounted in law to payment, or in any event to payment to the extent of the credit which the Nolanville bank then had

with the Temple bank; and, second, by virtue of certain provisions of the Uniform Negotiable Instruments Law, which will be referred to hereafter. We have reached the conclusion that neither of these contentions can be sustained.

[1] Both by the express pleadings of Box and under the established law of this state the Temple bank was merely the collecting agent of Box in handling the check. Tillman Bank v. Behringer (Tex. Sup.) 257 S. W. 206.

[2] As such agent the Temple bank was liable to Box ,only in case it was guilty of negligence in the manner in which it handled the check, and then only in case loss occurred by reason of such negligence.

It is not contended that the Temple bank was guilty of negligence in the manner in which the check was handled. Nor does the evidence show negligence. The check was sent direct to the Nolanville bank, both in accordance with a general custom of banks, and under the express stipulation sent by the Temple bank to the Lometa bank. Bank v. Bank, 106 Tex. 297, 166 S. W. 689, L. R. A. 1918E, 336; Bank v. Gamer Co. (Tex. Sup. not yet officially reported) 213 S. W. 927, 6 A. L. R. 613.

The fact that the amount of the check was debited against the Nolanville bank and credited to the Lometa bank on the books of the Temple bank has no material bearing on whether the check was paid. This was a mere matter of bookkeeping. These entries were made only conditionally, and could become absolute only upon actual payment of the check. The Temple bank, since it acted only as a collecting agent, and in accordance with a well-recognized custom, as well as in strict accordance with its stipulation of acceptance of the agency, had the right, in case the check was not paid, to debit the account of the Lometa bank and credit the account of the Nolanville bank with the amount of the check. Bank v. Gamer Co. above; Heid Bros. v. Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904.

The last case cited quotes with approval the following from Bank v. Armstrong, 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363:

"No mere bookkeeping between [a bank] and its subagent could change the actual status of the parties or destroy rights which arise out of the real facts of the transaction."

[3] The action of the Nolanville bank in stamping the check "paid" and retaining possession of it did not constitute payment to Box's agent, the Temple bank. This question is concluded in the Gamer Co. Case, above. The facts in that case are stronger than those in the present case. There the check was not only marked "paid" by the payee bank, but was charged against the account of the drawer and delivered to him. The forwarding bank never reacquired the check; but, when it failed to get possession of it, merely charged back the amount against its correspondent, and notified it of its dishonor. In that case the Supreme Court say that the payee bank "appropriated the check instead of paying it." Whatever may have been the intention of the Nolanville bank with regard to payment, and whatever may have been its acts, that intention and those acts alone could not constitute payment in so far as the Temple bank was concerned, unless the latter acquiesced therein or accepted them as payment. If the Nolanville bank had reported to the Temple bank that the check was paid without remitting sufficient funds together with its balance to pay it, and the Temple bank had accepted this as payment, then the Temple bank would have been liable to Box for the full amount of the check, and the Nolanville bank would have been liable to the Temple bank for the amount of the overdraft thus created. But the Nolanville bank could not force the Temple bank to carry an overdraft against it, or to accept its liability, or promise of payment of the draft. Payment in that manner could be effected only by mutual agreement between the two banks, or conduct tantamount thereto. No such agreement was made, and the record shows that, as soon as the Temple bank ascertained that the Nolanville bank might not pay the check, it notified the Lometa bank. Under the holding in Bank v. Gamer Co., we think its responsibility ended at that time. It had no authority to pay to the Lometa bank or Box whatever balance it might hold to the credit of the Nolanville bank, when that balance was not sufficient to discharge the check in full. The check was either paid in full, or not paid at all, and under the facts of the case we think clearly there was no payment.

[4] Appellee urges that the check was paid under the Uniform Negotiable Instruments Act, §§ 88, 119, 185, 137, 89, and 191 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—88, 6001—119, 6001—185, 6001—137, 6001—89, 6001—191). These sections read:

"Art. 6001—88. *Payment in Due Course.*—Payment is made in due course when it is made at or after the maturity of the instrument to the holder thereof in good faith and without notice that his title is defective."

"Art. 6001—119. *What Constitutes Discharge.*—A negotiable instrument is discharged:

"1. By payment in due course by or on behalf of the principal debtor;

"2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"3. By the intentional cancellation thereof by the holder;

"4. By any other act which will discharge a simple contract for the payment of money;

"5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

"Art. 6001—185. *Check Defined.*—A check is a bill of exchange drawn on a bank payable on

demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

"Art. 6001—137. *Drawee Retaining or Destroying Bill.*—Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

"Art. 6001—89. *To Whom Given.*—Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

"Art. 6001—191. *Definitions.*— * * * 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

That under none of these provisions, applied to the facts of the case, can the check be held to have been paid we think is clear. If we regard the Nolanville bank as the "principal debtor," it cannot be said that "the principal debtor" ever became the holder of the instrument "in its own right." The check was sent to it by the Temple bank, the agent of the owner, for payment, and as against the owner or his agent it could not acquire any interest in the check without complying with the terms on which it received it.

The fact that the check was not returned to the Temple bank within 24 hours after its receipt by the Nolanville bank would be sufficient to bind it as acceptor under section 137, if it were sought to hold it as such. But for the reasons already stated, that fact could not be held to constitute payment to the Temple bank, unless that bank chose to accept this action as payment. The same is true relative to any failure on the part of the Nolanville bank to notify the Temple bank of honor of the check under section 89. The Temple bank did notify the Lometa bank on October 9th that the check would probably not be paid, and wired that bank as soon as the check was returned.

The record conclusively shows that the Temple bank did everything the law required of it, and could not be held responsible for the amount of the check under any theory of payment.

[5] We think the cross-assignment of Box, questioning the holding of the trial court that the assignment should be reformed so as to exclude therefrom the credit in the Temple bank in favor of the Nolanville bank to the extent of checks drawn against that credit by the Nolanville bank, should be sustained. The assignment in express language covers all credits, indebtednesses, and claims against other banks in favor of the Nolanville bank. The only testimony relied upon as supporting the trial court's holding in this

regard is that at the time the assignment was made these checks were outstanding; that the owners of the bank did not know whether they had been paid or not, but in going over the assets of the bank they took the bank's books as showing the amount of credits they had with their several correspondent banks; and that according to their method of bookkeeping they charged themselves and credited their correspondents with whatever checks they had drawn against them. There is no evidence that there was any understanding or agreement between the proprietors of the Nolanville bank and the trustee or the creditors with reference to the amount of the credit in the Temple bank, but on the contrary the evidence shows, without dispute, that the intention was to cover all the assets including credits which the Nolanville bank had, so as to prevent any credits from gaining a preference by garnishment.

[6] It is not contended that the issuance of the checks by the Nolanville bank in favor of the Federal Reserve Bank and Partain amounted to an assignment of the fund held by the Temple bank to the extent of such credits. Nor did the issuance of such checks amount to an assignment in law. The holders of those checks were not any more entitled to the fund held by the Temple bank than any other creditor, and any other creditor was as much at liberty to garnishee the fund as were the plaintiffs or Partain. Plaintiffs did not claim any interest in the fund execpt through the garnishment. Under no interpretation of the evidence can it be concluded that any exception was to be made of any part of the fund in the Temple bank from the operation of the assignment; and accordingly we think the cross-assignment of Box in this regard should be sustained.

It follows from the above holdings that Box is not entitled to the fund in his individual capacity, but is entitled to recover it for use of Layne, trustee.

The trial court's judgment, in so far as it renders judgment in favor of Box, individually, for the fund held by the Temple bank, is reversed, and the cause remanded to the trial court with instructions to render judgment for such fund in favor of Box for the use of Ben S. Lane, trustee. In all other respects the trial court's judgment is affirmed.

Reversed and remanded in part, with instructions, and in part affirmed.

### On Motion for Rehearing.

A motion for rehearing has been filed both by appellants and appellee.

In appellee's motion our attention is called to the fact that the record shows that trustee Layne redelivered the Box check to the Temple bank on October 14, 1920, whereas we stated in our opinion that this occurred on October 13th. The error is unimportant.

We acknowledge it, however, and make correction accordingly.

Appellant in its motion objects to our holding that the evidence does not support the trial court's finding to the effect that the assignment of the Nolanville bank to Layne, trustee, in so far as it included the deposit in Temple bank to the extent of the checks previously drawn against that deposit, did not represent the real intention of the parties, and should be reformed so as to exclude the deposit to the extent named. This objection is based upon two grounds: First, that there was no cross-assignment of error filed in the trial court raising the issue; and, second, that the evidence was sufficient to support the finding.

Concerning the second ground, it is only necessary to say that we are clear in the view that we have given the evidence the only interpretation of which it will fairly admit. We do not deem it necessary to set forth the evidence upon this issue in detail. This has been done with much care in appellee's brief and in appellants' motion for rehearing.

[7] We have reached the conclusion, after careful consideration of the first ground, that it should be overruled.

District Court rule 101, which governs the matter of cross-assignments by the appellee provides that they may be incorporated in the brief, but need not be copied in the transcript.

Appellee filed in the trial court what he styled his exceptions to the judge's findings of fact and conclusions of law, urging that the finding and conclusion to the effect that the assignment to Layne, trustee, embraced the portion of the deposit in question by mistake and should be corrected in that regard, "is not supported by, but is contrary to, the testimony adduced in the trial of the cause." These exceptions were carried into appellee's brief, and appropriate propositions presented, briefed, and argued upon this issue. No objection to consideration of the issue as raised was made by appellant prior to its motion for rehearing.

The authorities hold, quite generally, that cross-assignments of error will not be considered on appeal when not filed in the trial court. But we are not prepared to hold that Courts of Civil Appeals, upon reversing a judgment of the trial court, are precluded from looking beyond the findings of the trial court in determining the proper disposition to be made of the case, merely because the successful party in the trial court has not followed up an exception to an averse finding of fact and conclusion of law, with a formal cross-assignment of error.

[8] Where a judgment of the trial court is reversed, the appellate court is vested with a wide discretion in determining the proper disposition to be made of the cause. We would not be warranted, we think, in setting aside the trial court's findings and conclusions only in the respect complained of by appellant, leaving them intact in the respects favorable to appellant, where the statement of facts shows that the latter findings and conclusions are without support in the record. That in the interest of reaching a proper disposition of the case the appellate court has the power, after setting aside the findings and conclusions of the trial court in part, to set them aside in toto, we have no doubt. However, we have reached the conclusion that it may better serve the ends of justice to remand the cause generally as to appellants and appellees without instructions to the trial court.

It is accordingly ordered that our former judgment be set aside, and judgment entered as follows: That as to appellants and appellee Box, individually and as a creditor in behalf of Layne, trustee of the Nolanville bank, the judgment of the trial court is reversed, and the cause remanded to that court, for a new trial in accordance with our former opinion herein. In all other respects the trial court's judgment is affirmed. Except as they may be thus modified, both motions are overruled.

Overruled except as modified.