**RODGERS et al. v. BOX et al.　(No. 6968.)**

(Court of Civil Appeals of Texas.　Austin.
May 12, 1926.)

1. **Banks and banking** ☜☞78—**General assignment for benefit of creditors by banking partners of all credits, indebtedness, and claims against other banks included all deposits in other banks, notwithstanding outstanding checks or drafts.**

As a matter of law, general assignment for benefit of creditors by banking partners of all credits, indebtedness, and claims against other banks included all deposits in other banks, notwithstanding checks or drafts were outstanding which had not been presented for payment.

2. **Reformation of instruments** ☜☞45(2)—**Evidence held sufficient to support judgment that committee drawing general assignment for benefit of creditors of bank did not by mistake leave out of assignment sufficient money to pay outstanding drafts.**

In action to reform general assignment for benefit of creditors of bank so as to except certain outstanding drafts against other banks, evidence *held* sufficient to sustain judgment that committee drawing assignment ·did not make any mistake, or did not by oversight leave out of assignment sufficient money to pay drafts.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by Mrs. A. J. Rodgers and others against F. E. Box and others.　From the judgment, plaintiffs appeal.　Affirmed.

M. Edgar Monteith, of Houston, for appellants.

J. B. Talley, of Temple, for appellees.

BLAIR, J.　This is the second appeal of this cause.　Our opinion on the former appeal is reported in 264 S. W. 491.　It completely states the case, and we will not take the space to restate it here.

The question presented by this appeal is whether there is sufficient evidence to support the trial court's judgment refusing to reform a general assignment for the benefit of all creditors of the Farmers' National Bank of Nolanville, so as to except from the said assignment two drafts, aggregating $2,274, drawn by said Farmers' National Bank of Nolanville on the First National Bank of Temple, Tex., in favor of the Federal Reserve Bank of Dallas, which checks are now owned by appellants.　The ground for reform was an alleged mistake of the scrivener to incorporate a clause in the general assignment to exclude therefrom enough money to pay the drafts.　On the former appeal, we reversed the judgment decreeing reform of the assignment with respect to this matter, and remanded the cause for trial on that issue.　A second trial to the court resulted in a judgment denying the reform of the assignment as prayed for.　The appeal is from that judgment, and, although several assignments of error are urged, they raise but one question—that the evidence as a matter of law authorizes the reform of the assignment in the particulars mentioned.　We do not sustain the contention.

[1] The testimony shows that the creditors and depositors of the Nolanville bank met on Monday night; October 11th, to determine what plan should be followed with reference to the failing condition of the bank.　A committee was appointed to investigate the affairs the following day and to report their plan of procedure back to a meeting of the creditors and depositors on the following night.　This committee prepared, of their own initiative, a general assignment for the benefit of all creditors of all the property then owned by the bank, to be executed by Will Rancier, Ben S. Layne, and E. Layne, the private owners and managers of the bank.　At the time this assignment was prepared, the drafts in favor of the Federal Reserve Bank upon the Temple bank had not been presented for payment, and, as a matter of law, the general assignment for the benefit of the creditors by the banking partners of all credits, indebtedness, and claims against other banks in favor of the assignors included all of the deposits in another bank, notwithstanding checks or drafts against such deposits were outstanding which had not been presented for payment.

The testimony on this trial does not differ materially from that adduced on the former trial, but goes more into detail with reference to the action of the committee who drew the assignment.　It shows that, immediately prior to the actual writing of the assignment, the committee were informed about the two drafts for $2,274, drawn in favor of the Federal Reserve Bank against the Temple bank, and the general impression seems to have been that they had probably been paid, or at least the committee did not know whether they had been paid.　The principal discussion of the committee was whether these drafts constituted a prior assignment of the funds in the bank on which it was drawn, and for that reason they contend that they made no mention of them, but simply drew the assignment to cover whatever property of any kind or character the Nolanville bank owned at that time.　R. E. Sutton, of the committee, upon whom the testimony shows the burden rested for drawing it, testified:

"At that time I knew and the committee knew about the Federal Reserve Bank draft, but in drafting the instrument we did not except from it enough money to pay the Federal Reserve Bank draft.　As I explained, we did not except anything.　We expected that it would be settled before the instrument was executed. ·The committee intended to convey

to the trustee all property legally belonging to the Farmers' Bank of Nolanville. Mr. Monteith and I discussed it about covering the bank's deposits, and we said, 'Well, there may be deposits in other banks, and we will just make it a broad assignment,' and that is the way we made it. We figured to make it cover the money on hand and everything else. We did not figure that there was any money in the bank here and in the bank at Temple at the time we were drawing it. I knew there was money in the Temple bank, and I did not question his getting it. I just knew that he had gotten it here, and did not figure anything except that he would get it there."

The committee further discussed these drafts, and knew at the time that one of the assignors had gone to Temple for the purpose of trying to get whatever balance was in the Temple bank after the payment of the $2,274 drafts, or knew that that was the intention of the assignor at the time. It is also undisputed that neither of the assignors was present at the time of these discussions with reference to the status of the $2,274 of drafts on the Temple bank, nor does it show that the matter was ever mentioned by any member of the committee to the assignors prior to their executing the assignment. Some of the committee who prepared the assignment testified that the depositors and creditors generally knew about the two drafts on the Temple bank, but appellee testified that he was not present and knew nothing of them, and that he knew nothing except that a general assignment of all the property had been made for the benefit of all the depositors and creditors. This clearly presents a disputed issue of fact. Mr. Rancier, one of the assignors, testified:

"I do not think I discussed with the committee whether or not I would make an assignment before it was actually drawn. I think it was drawn and presented and explained and signed. It is my recollection that the committee had the instrument drawn during the day of October 12th and presented it to me at the meeting on the night of October 12th, and I think I signed it at that time. I certainly heard that instrument read, or read it myself, I do not recall which, but I am sure I knew what I was signing. I understand that that instrument conveyed all of the assets of every kind and character legally belonging to the bank—money, notes, and everything that belonged to the bank passed under that assignment. I do not know whether or not the Federal Reserve Bank drafts were mentioned at the time I signed that assignment on the night of October 12th. I do not think it was."

He further testified:

"I testified on the previous trial of this cause, according to the stenographer's statement of facts, I said at that time I did not undertake to determine what legally belonged to the bank. I did not undertake to pass on the question of law as to what were the bank's legal rights. I guess this statement quoted from the statement of facts is true. At the time of executing the assignment, I do not think there was anything said about the Federal Reserve Bank draft or Belton draft, or any other draft, and there was nothing said about Mr. Box's check on Tuesday night. * * * As to whether they asked me to except from the assignment anything that legally belonged to the bank, I do not think anything was said about a draft when the committee talked to me. I am sure when they previously asked me to sign they did not say anything about the draft."

[2] We think this testimony is sufficient to sustain the trial court's judgment, for it clearly shows that the committee did not make any mistake, or did not by oversight leave out of the assignment sufficient money to pay the $2,274 drafts. In fact, they positively testified that they drew the assignment so it would cover everything, and no one testified that it was the intention of the assignors to have those drafts paid first out of the funds belonging to the bank. The thing troubling them was whether the outstanding drafts constituted a prior assignment of the funds to that extent, and that they considered it a legal question on which they did not attempt to pass, but simply drew the assignment for the purpose of covering the entire property owned by the bank at the time. Rancier never testified that it was his intention to specifically exempt the amount of these drafts from the assignment, but that, having executed the drafts, he did not know the legal status of the bank with reference to them, or that he thought they had probably been paid, and in discussing the matter he considered the balance shown to belong to the bank on its books constituted the entire assets of the bank. We think the testimony sufficiently supports the judgment of the trial court, and it will be affirmed.

Affirmed.